# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| THE STATE OF LOUISIANA, by and through its Attorney General, LIZ MURRILL, and ROSALIE MARKEZICH,<br><br>         Plaintiffs,<br><br>     v.<br><br>U.S. FOOD AND DRUG ADMINISTRATION, *et al.*,<br><br>         Defendants. | Civ. No.: 6:25-cv-01491<br>Judge: David C. Joseph<br>Mag. Judge: David J. Ayo |

## DECLARATION OF ABIGAIL LONG

I, Abigail Long, declare under penalty of perjury as follows:

1. I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am an employee of Danco Laboratories, LLC. Based on my position as Vice President of Marketing and Operations at Danco, I have personal knowledge of the matters herein.

3. Danco is a small, privately held pharmaceutical company that holds the New Drug Application (NDA) for Mifeprex. As the sponsor of the NDA for Mifeprex, Danco has the right under the Federal Food, Drug, and Cosmetic Act to market and distribute Mifeprex. Danco holds no other NDAs and does not do any other business other than marketing and distributing Mifeprex.

4. Danco has held the NDA and been responsible for the distribution of Mifeprex in the United States for over 25 years.

5. The approval of Mifeprex was subject to a number of restrictions and requirements about how the drug is distributed, which have been incorporated into a Risk Evaluation and Mitigation Strategy (REMS) since 2008. The specific provisions of the REMS have been subject

1

to revisions over the years, with the most recent revisions being approved by FDA in 2023. The 2023 revisions primarily removed a requirement that the drug be dispensed in-person by the prescribing healthcare provider or someone under their supervision, allowing the drug to be dispensed by certified pharmacies in response to a prescription from a certified prescriber, either through retail locations or by mail or courier service (such as Federal Express).

6. Since the 2023 REMS took effect, Danco has certified retail pharmacies, both pharmacy chains and independent pharmacies, to dispense Mifeprex in accordance with the terms of the REMS.

7. The new conditions of use in the 2023 REMS required changes to multiple, related materials, including:

   a. Prescribing Information
   b. Medication Guide
   c. Patient education materials
   d. Patient Agreement
   e. REMS document and supporting document
   f. Prescriber Agreement
   g. Danco website
   h. Promotional materials
   i. Contracts with suppliers and distributors.

8. To my knowledge, no court-ordered stay or injunction of a REMS has ever taken effect. As a result, there is substantial uncertainty about what that would mean for a sponsor, for FDA, for a health care provider, and for patients.

9. In endeavoring to understand what FDA would expect of Danco if the court were to order the requested stay or injunction of the 2023 REMS, I have reviewed the declaration that FDA submitted to the Supreme Court of the United States in connection with seeking emergency relief in the *Alliance* litigation.

10. That declaration provided FDA's response to the Fifth Circuit's "assum[ption] that the conditions of use for Mifeprex, including the REMS, could simply snap back to what they were prior to" any stayed approvals of labeling changes or REMS modifications. Declaration of Janet Woodcock ¶ 10, Emergency Stay Application, Appendix 113a, *FDA v. Alliance for Hippocratic Medicine*, Supreme Court No. 23A902 ("Stay Appendix").[1] The declaration stated that "[t]he reality is far more disruptive" than simply reverting to a previously approved REMS. *Id.*

11. The FDA declaration stated that, if the court were to invalidate certain revisions to the REMS, "the sponsor would be required to submit a supplement to revise" all of the documents stating the approved conditions of use "and obtain FDA approval in order to distribute a product whose labeling conforms" with earlier iterations of the FDA's "conditions of approval (including the REMS)" and the court orders. *Id.* ¶ 13, Stay Appendix 114a.

12. The FDA declaration further stated that "[t]he combination of the District Court's and Fifth Circuit's orders thus arguably requires all current prescribers to be re-certified." *Id.* ¶ 14, Stay Appendix 114a.

13. The FDA declaration stated that absent a stay of the lower court orders from the Supreme Court, "the sponsors' drug products immediately would become misbranded and thus unlawful to introduce in interstate commerce." *Id.* ¶ 15, Stay Appendix 115a.

14. Speaking specifically to Mifeprex, the FDA declaration said "as a result of the courts' orders, Mifeprex … will be misbranded until the sponsor submits a supplemental application proposing changes to the conditions of use consistent with the courts' orders, FDA reviews and approves that supplement, and the sponsor incorporates those changes into the labeling and packaging for the product. The sponsor would also need to post and disseminate new Prescriber and Patient Agreement Forms and, as noted above, most prescribers would need to become recertified." *Id.*

---

[1] This declaration is available on the Supreme Court's docket at https://www.supremecourt.gov/DocketPDF/22/22A902/263491/20230414103258942_Alliance%20for%20Hippocratic%20Med%20%20application.pdf.

15. The FDA declaration addressed the impact of enjoining several FDA decisions from 2016 forward, in contrast to this case, which I understand is limited to the 2023 REMS. I do not know for sure whether FDA's view of the need to submit a supplemental application, obtain FDA approval, and incorporate those changes into the labeling and packaging would apply in the context of this case, or whether providers would have to be recertified. Based on the FDA declaration, however, the company's current understanding is that these steps must be taken in response to any stay or injunction of the 2023 REMS.

16. Consistent with FDA's view as stated in its Supreme Court declaration and Danco's understanding of the applicable statutory provisions on which FDA's view is presumably based, Danco would be required to revise all of the materials listed in paragraph 7 above, and we expect it would require prescribers to be re-certified and policies and procedures in place with distributors to be substantially revised. Under the statements in FDA's declaration, it is Danco's current understanding that Danco would not be legally authorized to distribute Mifeprex unless and until all of those steps have been completed, which would take time to accomplish.

17. Danco would also be required to notify all Certified Pharmacies that they are effectively de-certified and no longer able to order Mifeprex or to fill or dispense Mifeprex to patients. Danco would need to undertake an administrative and logistical process for Certified Pharmacies to return any product to Danco's distributors. Danco's understanding is that there are fewer options for in-person clinic appointments given the increase in telemedicine and pharmacy availability over the past several years. As a result, Danco's understanding is that the removal of pharmacies from the distribution chain would have severe impacts on women seeking care, given the reduced number of clinics, and leading to women being underserved.

18. Like all other NDA holders, Danco is (and has always been) required to report to FDA all adverse drug experiences from any source at least annually and all adverse drug experiences that are both serious and unexpected within 15 days of receipt. Anyone can report an adverse drug experience to Danco or directly to FDA, and the approved Mifeprex labeling includes

Danco's telephone number and email and FDA's telephone number and website for reporting such events.

19. In addition, under the current REMS, Mifeprex prescribers have an additional reporting requirement. They are required to report to Danco—and Danco then is required to report to FDA within 15 days—any patient deaths. This additional reporting requirement has been included in each iteration of the REMS applicable to Mifeprex. I understand that this additional reporting requirement is highly atypical, even for products subject to a REMS.

20. Because Danco has only a single pharmaceutical product, any action that prevents dispensing of Danco's product or affects the terms of distribution would significantly and negatively affect Danco. If, as a result of changes to the approved conditions of distribution and/or the process for adopting such changes, Danco is prevented from distributing our product, we will not be generating revenue. The failure to generate revenue for anything longer than a de minimis period of time would cause grave concerns and could result in the effective closure of our business. The impacts to patient care in states that have taken a different approach than Louisiana's would also be immediate and substantial.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 3, 2026

_____
Abigal Long