# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

THE STATE OF LOUISIANA, by and through its Attorney General, LIZ MURRILL, and ROSALIE MARKOZICH,

      Plaintiffs,

v.

U.S. FOOD AND DRUG ADMINISTRATION, et al.,

      Defendants.

Case No. 6:25-cv-01491-DCJ-DJA

**AMICI CURIAE OF NEBRASKA, ALABAMA, ALASKA, ARKANSAS, GEORGIA, IDAHO, INDIANA, IOWA, KANSAS, MISSISSIPPI, MISSOURI, MONTANA, NORTH DAKOTA, OHIO, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, UTAH, WEST VIRGINIA, AND WYOMING IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................3

INTRODUCTION & INTEREST OF AMICI CURIAE ...................................7

ARGUMENT ............................................................................9

   I.   Louisiana has standing to challenge the 2023 REMS...........................9

      A.  The 2023 REMS harms Louisiana's sovereign
         interest in enforcing its own laws. ................................. 10

      B.  The 2023 REMS imposes a pocketbook injury on States............. 16

CONCLUSION......................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alden v. Maine,*
527 U.S. 706 (1999) ........................................................................ 10

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
458 U.S. 592 (1982) .................................................................. 10, 12

*All. for Hippocratic Medicine v. FDA,*
2023 WL 2913725 (5th Cir. Apr. 12, 2023) .................................. 16

*Bost v. Ill. State Bd. of Elecs.,*
607 U.S. ___, 2026 WL 96707 (2026) .......................... 9, 13, 16, 17

*Brown v. Fletcher's Estate,*
210 U.S. 82 (1908) ......................................................................... 11

*Cal. Ass'n of Private Postsecondary Schs. v. DeVos,*
344 F. Supp. 3d 158 (D.D.C. 2018) ............................................... 14

*Cameron v. EMW Women's Surgical Ctr., PSC,*
595 U.S. 267 (2022) .................................................................. 10, 13

*Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.,*
766 F.2d 228 (6th Cir. 1985) ......................................................... 10

*City of Arlington v. FCC,*
569 U.S. 290 (2013) ......................................................................... 8

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ........................................................................ 12

*Diamond Alternative Energy, LLC v. EPA,*
606 U.S. 100 (2025) ................................................... 13, 14, 17, 18

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022) ................................................... 7, 10, 11, 15

*FDA v. All. for Hippocratic Medicine,*
602 U.S. 367 (2023) ........................................................................ 17

*GenBioPro, Inc. v. Raynes*,
     144 F.4th 258 (4th Cir. 2025) ...................................................................... 10

*Gregory v. Ashcroft*,
     501 U.S. 452 (1991) ...................................................................................... 12

*Hughes v. Fetter*,
     341 U.S. 609 (1951) ...................................................................................... 12

*Maine v. Taylor*,
     477 U.S. 131 (1986) ...................................................................................... 13

*Maryland v. King*,
     567 U.S. 1301 (2012) (Roberts, C.J., in chambers) ................................... 14

*Medtronic, Inc. v. Lohr*,
     518 U.S. 470 (1996) ...................................................................................... 10

*Metropolitan Life Ins. Co. v. Massachusetts*,
     471 U.S. 724 (1985) ...................................................................................... 10

*Monsanto Co. v. Geertson Seed Farm*,
     561 U.S. 139 (2010) ...................................................................................... 17

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
     584 U.S. 453 (2018) ...................................................................................... 11

*Nat'l Pork Producers Council v. Ross*,
     598 U.S. 356 (2023) ...................................................................................... 11

*New York v. New Jersey*,
     598 U.S. 218 (2023) ...................................................................................... 10

*Tennessee v. U.S. Dep't of Educ.*,
     615 F. Supp. 3d 807 (E.D. Tenn. 2022) ...................................................... 13

*Texas v. United States*,
     50 F.4th 498 (5th Cir. 2022) ........................................................................ 16

*Texas v. United States*,
     787 F.3d 733 (5th Cir. 2015) ....................................................................... 10

*Toomer v. Witsell*,
     334 U.S. 385 (1948) ...................................................................................... 12

*Trump v. CASA, Inc.*,
  606 U.S. 861 (2025) ................................................................... 14

*United States v. Texas*,
  599 U.S. 670 (2023) ................................................................... 14

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ................................................................... 11

**Statutes**

Ala. Code § 26-23E-7 (1975) ....................................................... 7

Ala. Code § 26-23H-4 (1975) ....................................................... 7

Ark. Code Ann. § 5-61-304 ........................................................... 7

Ark. Code Ann. § 20-16-1504 ....................................................... 7

Ga. Code Ann. § 16-12-141 ........................................................... 7

Ind. Code § 16-34-2-1 ................................................................... 7

Iowa Code Ann. § 146B.2 ............................................................. 7

La. R.S. 40:1061.11 ....................................................................... 9

Miss. Code Ann. § 41-41-75 ......................................................... 7

Mo. Rev. Stat. § 188.017 ............................................................... 7

Neb. Rev. Stat. § 28-3,106 ..................................................... 7, 15

Neb. Rev. Stat. § 28-325 ............................................................. 15

Neb. Rev. Stat. § 28-335 ....................................................... 7, 15

S.C. Code Ann. § 44-41-650 (1976) ............................................. 7

S.D. Codified Laws § 22-17-5.1 ................................................... 7

Tex. Health & Safety Code § 170A.002 ....................................... 7

Utah Code Ann. § 76-7a-201 (1953) ............................................. 7

W. Va. Code § 16-2R-3 ........................................................................7

W. Va. Code § 30-14-12 ......................................................................7

**Other Authorities**

*#WeCount Report, April 2022 to June 2025* (Dec. 9, 2025),
https://perma.cc/Z765-EUXB ........................................................ 15

*#WeCount report, April 2022 to June 2025*,
https://societyfp.org/research/wecount/wecount-june-2025-
data/ .......................................................................................................8

A. Scalia, *The Doctrine of Standing as an Essential Element of the
Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983) .......................9

Jan. 13, 2026 Letter from 17 Attorneys General to the Senate
Committee on Health, Education, Labor and Pensions
https://media.ark.org/ag/Letter-to-Senate-HELP-cmte-Shield-
Laws-FINAL.pdf ...................................................................................8

John Locke, *The Second Treatise of Government* ............................................ 13

U.S. Const. art. IV, § 1 ...................................................................... 12

U.S. Const. art. IV, § 2 ...................................................................... 12

## INTRODUCTION & INTEREST OF AMICI CURIAE

States have always had a "legitimate interest[ ]" in protecting unborn life. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 301 (2022). For nearly fifty years, however, States were stymied in how they could pursue that interest. That changed in 2022, when the Supreme Court "return[ed] the issue of abortion to the people's elected representatives." *Id.* at 232. After *Dobbs*, States can now enact and enforce laws "based on their belief that abortion destroys an 'unborn human being.'" *Id.* at 256.

Amici States Nebraska, Alabama, Alaska, Arkansas, Georgia, Idaho, Indiana, Iowa, Kansas, Mississippi, Missouri, Montana, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Utah, West Virginia, and Wyoming have adopted such laws[1]—including laws that regulate chemical abortion.[2]  These laws represent the considered judgments of "the people and their elected representatives" after hard-fought democratic deliberation. *Id.* at 259.

Rather than respect these States' prerogatives to protect prenatal life, the Biden Administration sought to undermine them. On the very day the Supreme Court decided *Dobbs*, President Biden avowed to ensure that abortion drugs were "as widely accessible as possible," including through "telehealth and sent by mail." Fact Sheet:

---

[1] Neb. Rev. Stat. § 28-3,106; Ala. Code § 26-23H-4 (1975); Ark. Code Ann. § 5-61-304; Ga. Code Ann. § 16-12-141; Ind. Code § 16-34-2-1; Iowa Code Ann. § 146B.2; Miss. Code Ann. § 41-41-75; Mo. Rev. Stat. § 188.017; S.C. Code Ann. § 44-41-650 (1976); S.D. Codified Laws § 22-17-5.1; Tex. Health & Safety Code § 170A.002; Utah Code Ann. § 76-7a-201 (1953); W. Va. Code § 16-2R-3.

[2] Neb. Rev. Stat. § 28-335; Ala. Code § 26-23E-7 (1975); Ark. Code Ann. § 20-16-1504; Ind. Code § 16-34-2-1; W. Va. Code § 30-14-12.

President Biden Announces Actions in Light of Today's Supreme Court Decision on Dobbs v. Jackon Women's Health Organization, The White House (June 24, 2022). In 2023, at President Biden's direction, the Food and Drug Administration promulgated a Risk Evaluation and Mitigation Strategy (REMS) to govern the chemical abortion drug mifepristone. Critically, the 2023 REMS removed a long-standing requirement that mifepristone be dispensed in-person and allowed the drug to be prescribed via telehealth. Even though States—like Nebraska—require a prescribing doctor to be physically present, doctors in California and New York can now prescribe mifepristone through telehealth under the 2023 REMS, and they are doing so without fear of consequences for breaking other States' laws.[3]

Like Louisiana, amici States believe that the Biden Administration's attempt to establish a nationwide abortion standard is an attack on state sovereignty. The Constitution does not give the federal government power over "every nook and cranny of daily life." *City of Arlington v. FCC*, 569 U.S. 290, 315 (2013) (Roberts, C.J., dissenting). The 2023 REMS allows California to set nationwide policy, regardless of what citizens in Louisiana and Nebraska may think. The Constitution promises more. Louisiana has suffered concrete harm and thus has standing to challenge the Biden Administration's unlawful actions.

---

[3] *See #WeCount report, April 2022 to June 2025*, https://societyfp.org/research/wecount/wecount-june-2025-data/ (noting that telehealth abortions have "continued to increase" and that "[s]hield laws continue to facilitate abortion access"); Jan. 13, 2026 Letter from 17 Attorneys General to the Senate Committee on Health, Education, Labor and Pensions https://media.ark.org/ag/Letter-to-Senate-HELP-cmte-Shield-Laws-FINAL.pdf (describing how shield-state residents are "mailing abortion drugs" to those in States where abortion is illegal).

## ARGUMENT

### I.    Louisiana has standing to challenge the 2023 REMS.

To have standing, Louisiana must "be able to answer a basic question: 'What's it to you?'" *Bost v. Ill. State Bd. of Elecs.*, 607 U.S. ___, 2026 WL 96707, at *3 (2026) (quoting A. Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)). Louisiana has "an obvious answer." *Id.* Through the democratic process, the people of Louisiana enacted a limitation on chemical abortions: the provider prescribing "the drug or chemical shall be in the same room and in the physical presence of the pregnant woman when the drug or chemical is initially administered, dispensed, or otherwise provided to the pregnant woman." La. R.S. 40:1061.11. Yet the 2023 REMS directly undermines this validly enacted law. The 2023 REMS permits out-of-state doctors to do exactly what State law forbids. And as Louisiana has experienced, bringing those doctors who openly defy Louisiana law to justice has not been easy.

Moreover, the 2023 REMS attempts to enshrine the policy preferences of some States over and against those of other States. California and New York do not get to set national abortion policy. Yet that's exactly what the 2023 REMS accomplishes. That's a direct affront to the sovereignty of prolife States, such as Louisiana, that have charted a different path.

Not only that, but because of the 2023 REMS, Louisiana will suffer economic harms through increased Medicaid costs.

Both harms, sovereign and financial, give Louisiana standing.

**A.    The 2023 REMS harms Louisiana's sovereign interest in enforcing its own laws.**

Our federalist system "preserves the sovereign status of the States," *Alden v. Maine*, 527 U.S. 706, 714 (1999), and reserves to each State "numerous and indefinite" powers within its jurisdiction, The Federalist No. 45. At a minimum, that power includes the ability "to create and enforce a legal code." *Texas v. United States*, 787 F.3d 733, 749 (5th Cir. 2015) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601–02 (1982)). "*Paramount* among the States' retained sovereign powers is the power to enact and enforce any laws that do not conflict with federal law."[4] *Cameron v. EMW Women's Surgical Ctr., PSC*, 595 U.S. 267, 277 (2022) (emphasis added). Our federalist system demands "respect" for "the place of States" in exercising their "residuary and inviolable sovereignty." *Id.*

The 2023 REMS pays this system no heed. *First*, the 2023 REMS imposes a national scheme on a state issue. *Dobbs*, 597 U.S. at 301. The Constitution establishes a limited federal government confined to enumerated powers. It leaves to the States "great latitude" to protect "the lives, limb, health, comfort, and quiet of all persons." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985) (cleaned up). "[P]rotect[ing] the people" within a State's borders is a "fundamental aspect of a State's sovereign power." *New York v. New Jersey*, 598 U.S. 218, 225 (2023); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996).

---

[4] The Biden Administration argued that the 2023 REMS preempted prolife States' laws. That's not only wrong, *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 267 (4th Cir. 2025) (holding that the Food and Drug Administration Amendments "fall[ ] well short of expressing a clear intention to displace the states' historic and sovereign right to protect the health and safety of their citizens"), but it also underscores why Louisiana has standing. *Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.*, 766 F.2d 228, 232–33 (6th Cir. 1985).

Abortion is no exception. *Dobbs*, 597 U.S. at 301. The Supreme Court unequivocally held that "the authority to regulate abortion must be returned to the people and their elected representatives." *Id.* at 292. Yet the 2023 REMs attempts to usurp the States' prerogatives on chemical abortion and federalize it. Nothing in the Constitution gives the federal government this power. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018) ("The Constitution confers on Congress not plenary legislative power but only certain enumerated powers. Therefore, all other legislative power is reserved for the States, as the Tenth Amendment confirms."). The 2023 REMS's infringement on state sovereignty directly harms Louisiana.

*Second*, the 2023 REMS frustrates horizontal federalism. By necessity, "[t]he sovereignty of each State … implie[s] a limitation on the sovereignty of all of its sister States." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980). "The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others." *Brown v. Fletcher's Estate*, 210 U.S. 82, 89 (1908). After all, the Founders experienced how unfettered state sovereignty could "cut[ ] off the lifeblood of the Nation" and accordingly "discarded the Articles of Confederation and adopted a new Constitution." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 404 (2023) (Kavanaugh, J., concurring and dissenting in part). Under this new Constitution, each state was afforded wide latitude to operate within *its* borders, resulting in "innovation and experimentation in government," "increase[d] opportunity for citizen involvement in democratic processes," and governments more

11

attuned to the "diverse needs of a heterogenous society." *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991).

The Constitution repeatedly references the respect States owe to sister States. For example, the Full Faith and Credit Clause imposes a "constitutional obligation to enforce the rights and duties validly created under the laws of other states." *Hughes v. Fetter*, 341 U.S. 609, 611 (1951); U.S. Const. art. IV, § 1. And the Privileges and Immunities Clause similarly bars "discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the fact that they are citizens of other States." *Toomer v. Witsell*, 334 U.S. 385, 296 (1948); U.S. Const. art. IV, § 2.

But the 2023 REMS effectively permits New York and California doctors to superimpose their views on States like Louisiana, whose citizenry and electorate have charted a different path. Under the 2023 REMS, a New York doctor can circumvent prolife States' clear prohibitions on telehealth chemical abortions. That is a direct affront to States' "sovereign interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982). A federal regulation on a quintessential state issue should not enable California's policy choices to extend beyond her borders and override Louisiana's contrary choices.

Prolife States are harmed as a result. To have standing, a litigant must show a "concrete, particularized, and actual or imminent" harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). And "courts have recognized that States suffer a cognizable injury for purposes of constitutional standing when they allege an intrusion

on their ability to enforce their own legal code, whether by way of direct interference or interference analogous to substantial pressure to change state laws." *Tennessee v. U.S. Dep't of Educ.*, 615 F. Supp. 3d 807, 821 & n.7 (E.D. Tenn. 2022) (collecting cases). Indeed, "a State clearly has a legitimate interest in the continued enforceability of its own statutes." *Maine v. Taylor*, 477 U.S. 131, 137 (1986). So "substantial" is a State's sovereign interest in "defend[ing] its laws" that the Supreme Court has admonished lower courts that it "should not be lightly cut off." *Cameron*, 595 U.S. at 277.

Put differently, standing separates those with a "personal stake" in a dispute from "mere bystander[s]." *Bost*, 2026 WL 96707, at *3. Like candidates vis-à-vis elections, States have an "obvious" interest in their legal codes' viability. *Id.* Candidates "spend untold time and resources seeking to claim the right to voice the will of the people," making their interest in fair and accurate elections "in no sense common to all members of the public." *Id.* (cleaned up). States also "spend untold time and resources" passing and enforcing state law, which is "in no sense common to all members of the public." As sovereigns, States "do not bear the sword for no reason," *see Romans* 13:4—they have been entrusted with authority to "regulate[ ] by laws" and "the power to punish the crimes committed against that law," John Locke, *The Second Treatise of Government*, Chapter 9. If a candidate is not a "mere bystander" to her own election, then neither is a State a "bystander" when it comes to the enforcement of its own laws. *Bost*, 2026 WL 96707, at *4 (citing *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025)).

13

Consider Louisiana's harm in a different context—proving irreparable harm for equitable relief. There, whenever "a State" is prevented from "effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 861 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). The standard to demonstrate irreparable harm is "more demanding" than the one to establish a concrete injury. *See Cal. Ass'n of Private Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018). So if a State suffers irreparable harm when it cannot effectuate its duly enacted statutes, it necessarily suffers concrete harm, too.

That Louisiana has standing to vindicate its sovereign interest in enforcing its own laws would not, as the FDA postulates, "expand state standing to challenge any federal action that allegedly increases crime or disorder." FDA Br. at 15. That ignores the harm alleged here and the context in which the 2023 REMS came to be. The 2023 REMS did not *incidentally* increase telehealth abortions. *Contra United States v. Texas*, 599 U.S. 670, 680 & n.3 (2023) (disclaiming standing when a State alleges harm from the "indirect effects" of a federal policy). Abetting illegal abortions was the very point. Mifepristone has one purpose: to induce an abortion chemically rather than surgically. The Biden Administration did not even attempt to hide the ball. It made clear that the "entire purpose" behind its actions was to make mifepristone available via telehealth, *regardless* of contrary state laws. *Diamond Alternative Energy*, 606 U.S. at 112. When the federal government takes regulatory action that

directly targets a State's validly enacted laws, that implicates the State's sovereign interest in its own legal code.

Like Louisiana, amici States have a clear sovereign interest in protecting prenatal life. *Dobbs*, 597 U.S. at 301. For instance, Nebraska's Legislature long ago enacted a statute declaring "an expression of the will of the people of the State of Nebraska and the members of the Legislature to provide protection for the life of the unborn child whenever possible." Neb. Rev. Stat. § 28-325. Under that statutory principle, Nebraska has prohibited abortions after twenty weeks' gestation, *id.* § 28-3,106, and altogether banned chemical abortions "unless the physician who uses or prescribes" abortion pills "is physically present in the same room with the patient when the physician performs, induces, or attempts to perform or induce the abortion," *id.* § 28-335.

Also like Louisiana, amici States have experienced sovereign harms as a result of the 2023 REMS. In Nebraska, for instance, telehealth abortions have steadily increased since 2023—despite a clear prohibition on the practice. Society of Family Planning, *#WeCount Report, April 2022 to June 2025* (Dec. 9, 2025), https://perma.cc/Z765-EUXB. Other amici States with similar bans have also experienced a drastic rise in telehealth abortions. *Id.* The 2023 REMS is the only explanation for the rise in these numbers when the State otherwise prohibits the practice altogether.

The data confirms that the 2023 REMS does an end-run around amici States' validly enacted laws. That is a direct affront to the States' sovereignty. Such a harm

is sufficiently concrete to give Louisiana standing to challenge the Biden Administration's intrusion on our federalist system.

**B.    The 2023 REMS imposes a pocketbook injury on States.**

The 2023 REMS imposes not only a sovereign injury on States, but it also imposes an economic one. "Pocketbook harm is a traditional Article III injury." *Bost*, 2026 WL 96707, at *6 (Barrett, J., concurring in the judgment). "That is so not only when a law directly imposes costs on a plaintiff, … but also when a plaintiff reasonably incurs costs to mitigate or avoid the substantial risk of a harm caused by a [law]." *Id.* (cleaned up).

As pled, Louisiana will suffer economic injury from the 2023 REMS. Without the federal government's imprimatur, Louisiana emergency rooms would experience mifepristone complications only from the occasional rogue doctor. That isn't the case under the 2023 REMS. Now a New York doctor can prescribe abortion drugs to a Louisiana patient with virtually no consequence. And if that patient suffers some complication, the Louisiana medical system must treat it. It's "statistically certain" that this will happen, *All. for Hippocratic Medicine v. FDA*, 2023 WL 2913725, at *10 (5th Cir. Apr. 12, 2023), making Louisiana's pocketbook injury as concrete as forcing the State to enroll more people in Medicaid, *Texas v. United States*, 50 F.4th 498, 517–20 (5th Cir. 2022). Any difference between the two, *see* FDA Br. at 18, is one of degree, not kind.

The FDA contends that the 2023 REMS does not "require Louisiana to do anything or refrain from doing anything," so it can't suffer an economic harm. FDA Br.

16

at 14 (cleaned up) (quoting *FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 385 (2023)). Not true. As a result of the illegal abortion drugs flowing into its borders, Louisiana has experienced "actual emergency-room visits by patients who took mifepristone received by mail and whose care costs will likely ultimately fall to Medicaid and the State." Compl. ¶ 142.

FDA cannot dodge these harms by contending that "Louisiana does not prescribe or use mifepristone." FDA Br. at 14 (quoting *AHM*, 602 U.S. at 385). Again, that treats Louisiana as a "mere bystander" to the erosion of its own laws when it clearly is not. *Bost*, 2026 WL 96707, at *3. Worse, it ignores that plaintiffs have standing when they suffer economic harm because of federal regulation—even if plaintiffs aren't the directly regulated parties. In *Diamond Alternative Energy*, fuel producers who were not directly regulated by a federal regulation could nevertheless challenge it because the California regulations enabled by the federal regulation would hurt the fuel producers' ability "to make money by selling fuel." 606 U.S. at 113–14. Similarly, alfalfa farmers could challenge a rule deregulating genetically modified alfalfa when they undertook costly preventative measures to "minimize the likelihood of potential contamination." *Monsanto Co. v. Geertson Seed Farm*, 561 U.S. 139, 154–55 (2010).

Louisiana has similar economic interests at stake here. The State will have to pick up the tab when its women are harmed from a drug that the State considers too dangerous to prescribe via telehealth. FDA cannot deny that is an economic harm.

Instead, FDA tries to stretch the chain of causation to suggest that such harms are attenuated. But there's nothing attenuated about what will occur here. President

Biden himself said that state laws prohibiting telehealth abortions would "be felt most acutely by underserved communities"—the very individuals who likely receive Medicaid benefits. La. Br. at 22. FDA cannot now turn around and treat this first link as unlikely. Nor can FDA disclaim the statistical certainty that a percentage of this population will experience complications requiring medical treatment when its own labels admit as much. *Id.* And if this "commonsense economic[s]" isn't enough, *Diamond Alternative Energy*, 606 U.S. at 116, then the numbers themselves establish the harm: Louisiana has pled at least $92,000 in increased Medicaid costs from two mifepristone-induced abortions in 2025. La. Br. at 23.

*     *     *

Through the 2023 REMS, the Biden Administration "target[ed]" prolife States whose citizenry reached a different conclusion on telehealth abortions. *Diamond Alternative Energy*, 606 U.S. at 125. The federal government cannot now "lock[ ]" these States "out of court as unaffected bystanders." *Id.* The 2023 REMS was a direct attack on these States' duly enacted laws, striking at the very heart of state sovereignty. Not only that, but States have suffered pocketbook harms that they otherwise would not have borne. Louisiana has standing to challenge FDA's illegal actions.

## CONCLUSION

This Court should grant Plaintiffs' motion for a preliminary injunction.

Dated: February 13, 2026          Respectfully submitted,


MICHAEL T. HILGERS
Attorney General

/s/ CODY S. BARNETT*
Solicitor General
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov
*Admitted Pro Hac Vice

*Counsel for Amici Curiae*

/s/ RACHEL T. VOGELTANZ
Rachel T. Vogeltanz (La. Bar No. 33501)
The Law Office of Rachel Thyre Vogeltanz, LLC
428 W. 21st Ave.
Covington, Louisiana 70433
Tel.: (985) 377-9271
Fax: (985) 302-0972
rachel@rachel.law

*Local Counsel for State of Nebraska*

On behalf of:

Steve Marshall
Attorney General
State of Alabama

Steve Cox
Attorney General
State of Alaska

Tim Griffin
Attorney General
State of Arkansas

Christopher M. Carr
Attorney General
State of Georgia

Raúl R. Labrador
Attorney General
State of Idaho

Theodore E. Rokita
Attorney General
State of Indiana

Brenna Bird
Attorney General
State of Iowa

Kris W. Kobach
Attorney General
State of Kansas

Austin Knudsen
Attorney General
State of Montana

Lynn Fitch
Attorney General
State of Mississippi

Catherine L. Hanaway
Attorney General
State of Missouri

Drew Wrigley
Attorney General
State of North Dakota

Dave Yost
Attorney General
State of Ohio

Gentner F. Drummond
Attorney General
State of Oklahoma

Alan Wilson
Attorney General
State of South Carolina

Marty J. Jackley
Attorney General
State of South Dakota

Ken Paxton
Attorney General
State of Texas

Derek Brown
Attorney General
State of Utah

John B. McCuskey
Attorney General
State of West Virginia

Keith G. Kautz
Attorney General
State of Wyoming

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing brief has been served on all counsel of record by ECF.

Dated: February 13, 2026

<u>/s/ *Cody S. Barnett*</u>
CODY S. BARNETT
*Counsel for Amici Curiae*