UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

THE STATE OF LOUISIANA, by and through its
Attorney General, LIZ MURRILL, and ROSALIE
MARKEZICH,

                                        No. 6:25-cv-01491-DCJ-DJA

       *Plaintiffs,*

    v.

U.S. FOOD AND DRUG ADMINISTRATION et al.,

       *Defendants.*

**MEMORANDUM OF LAW FOR AMICI STATES OF NEW YORK, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAI'I, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, OREGON, RHODE ISLAND, VERMONT, WASHINGTON, AND THE DISTRICT OF COLUMBIA IN OPPOSITION TO PLAINTIFFS' MOTION FOR A STAY**

JACOB K. WEIXLER
 *Counsel for Amici Curiae*
Weixler Law LLC
3640 Magazine Street
New Orleans, Louisiana 70015
(504) 408-2180
jkw@weixlerlaw.com

LETITIA JAMES
 *Attorney General*
 *State of New York*
28 Liberty Street
New York, New York 10005
(212) 416-6279
ester.murdukhayeva@ag.ny.gov

BARBARA D. UNDERWOOD
 *Solicitor General*
ESTER MURDUKHAYEVA
 *Deputy Solicitor General*
GALEN LEIGH SHERWIN
 *Special Counsel for Reproductive Justice*
  *of Counsel*

*(Additional counsel listed on signature pages.)*    Date: February 20, 2026

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND INTERESTS OF AMICI ....................................................................1

ARGUMENT ......................................................................................................................3

    I.    Medication Abortion Is a Safe and Effective Method
           for Terminating Pregnancies. .............................................................................3

    II.    The Elimination of the In-Person Dispensing Requirement
           Is Supported by Clinical Data and Has Helped Expand
           Access to Critical Healthcare in Underserved Communities. .................................6

    III.    Plaintiffs' Requested Relief Would Interfere with Amici States'
            Ability to Provide Healthcare to Their Residents. ...................................................10

CONCLUSION .................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Benisek v. Lamone,*
    585 U.S. 155 (2018)........................................................................................................10

*Dobbs v. Jackson Women's Health Organization,*
    597 U.S. 215 (2022)......................................................................................................2-3

*Farmland Dairies v. Barber,*
    65 N.Y.2d 51 (1985).....................................................................................................15

*Purcell v. Kennedy,*
    No. 1:17-cv-493, 2025 WL 3101785 (D. Haw. Oct. 30, 2025)..................................5

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982)......................................................................................................10

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)..........................................................................................................10

*Youngs Rubber Corp. v. C. I. Lee & Co.,*
    45 F.2d 103 (2d Cir. 1930).............................................................................................8

**Constitution**

Cal. Const. art. I, § 1.1 ........................................................................................................13

**Laws**

*Federal*

21 U.S.C. § 355-1 ........................................................................................................6, 8, 14

*State (alphabetical by jurisdiction)*

California
    Educ. Code § 99251 ...................................................................................................10
    Health & Safety Code § 123453 ...............................................................................13

Illinois
    775 Ill. Comp. Stat. Ann. 55/1-1 et seq. ..................................................................13

**Laws**                                                                                    **Page(s)**

*State (alphabetical by jurisdiction)*

Massachussetts
    Act of July 29, 2022, Ch. 127, 2022 Mass. Acts 740 ............................................................13
    Gen. Laws, ch. 15A, § 46...................................................................................................10

Maine Rev. Stat. Ann.
    tit. 22, § 1598 ....................................................................................................................13

New Jersey Stat. Ann.
    § 2A:160-14.1 ....................................................................................................................13
    § 10:7-1 ..............................................................................................................................13

New York
    Education Law § 6438-b .............................................................................................10, 13
    Public Health Law § 2599-aa ............................................................................................13

Vermont Stat. Ann.
    tit. 18, § 9493 et seq. ........................................................................................................13

**Miscellaneous Authorities**

Abigail R.A. Aiken et al., *Requests for Self-Managed Medication Abortion Provided Using Online Telemedicine in 30 US States Before and After the* Dobbs v. Jackson Women's Health Organization *Decision*, 328 JAMA 1768 (2022), https://jamanetwork.com/journals/jama/fullarticle/2797883 ....................................................12

Abigail R.A. Aiken et al., *Safety and Effectiveness of Self-Managed Medication Abortion Provided Using Online Telemedicine in the United States: A Population Based Study*, 10 Lancet Reg'l Health - Americas, no. 100200 (2022), https://pmc.ncbi.nlm.nih.gov/articles/PMC9223776/pdf/main.pdf ..........................................7

Advancing New Standards in Reprod. Health, Issue Brief, *Availability of Telehealth Services for Medication Abortion in the U.S., 2020-2022* (June 2023), https://www.ansirh.org/sites/default/files/2023-06/AFD%20Telehealth%20Issue%20Brief%206-14-23%20Final.pdf ...................................10

**Miscellaneous Authorities**                                         **Page(s)**

Am. Coll. of Obstetricians & Gynecologists & Soc'y of Fam. Plan., Prac. Bull. No. 225, *Medication Abortion Up to 70 Days of Gestation*, 136 Obstetrics & Gynecology e31 (2020, reaff'd 2023), https://journals.lww.com/greenjournal/fulltext/2020/10000/medication_abortion_up_to_70_days_of_gestation_.43.aspx?_gl= .................................................8

Am. Coll. of Obstetricians & Gynecologists, *Early Pregnancy Loss: Frequently Asked Questions* (last updated Sept. 2024), https://www.acog.org/womens-health/faqs/early-pregnancy-loss ................................................................................................3

Am. Coll. of Obstetricians & Gynecologists, *Leading Medical Organizations Reaffirm the Safety of Mifepristone* (May 22, 2025), https://www.acog.org/news/news-releases/2025/05/leading-medical-organizations-reaffirm-the-safety-of-mifepristone ............5

Amanda Jean Stevenson, *The Pregnancy-Related Mortality Impact of a Total Abortion Ban in the United States: A Research Note on Increased Deaths Due to Remaining Pregnant*, 58 Demography 2019 (2021), https://read.dukeupress.edu/demography/article-pdf/58/6/2019/1428602/2019stevenson.pdf...............................................................12

Amelia Thomson-DeVeaux, *Virtual Abortions Surged After Roe Was Overturned—But the Texas Ruling Could Change That*, FiveThirtyEight (Apr. 11, 2023), https://perma.cc/2Z2Z-N6PK.................................................................................11

Angie Leventis Lourgos, *Abortions in Illinois for Out-of-State Patients Have Skyrocketed. And Some Wait Times Are Exceeding Three Weeks*, Chi. Trib. (Aug. 2, 2022), https://www.chicagotribune.com/2022/08/02/abortions-in-illinois-for-out-of-state-patients-have-skyrocketed-and-some-wait-times-are-exceeding-three-weeks/ ............11

Application of the Comstock Act to the Mailing of Prescription Drugs That Can Be Used for Abortions, 46 Op. O.L.C. (Dec. 23, 2022), https://www.justice.gov/olc/opinion/file/1560596/dl?inline= ...................................8

Christine Dehlendorf et al., *Disparities in Family Planning*, 202 Am. J. Obstetrics & Gynecology 214 (2010), https://www.ajog.org/action/showPdf?pii=S0002-9378%2809%2900947-8.....................................................................................13

Citizen Pet. Response Letter from Ctr. for Drug Evaluation & Rsch., U.S. Food & Drug Admin., to Am. Ass'n of Pro-Life Obstetricians & Gynecologists & Am. Coll. of Pediatricians (Dec. 16, 2021), https://downloads.regulations.gov/FDA-2025-P-3288-0012/content.pdf ...............................................................................................6

**Miscellaneous Authorities**                                                              **Page(s)**

Courtney A. Schreiber et al., *Mifepristone Pretreatment for the Medical Management of Early Pregnancy Loss*, 378 N. Engl. J. Med. 2161 (2018), https://www.nejm.org/doi/pdf/10.1056/NEJMoa1715726 ......................................................3

Courtney Kerestes et al., *Person-Centered, High-Quality Care from a Distance: A Qualitative Study of Patient Experiences of TelAbortion, a Model for Direct-to-Patient Medication Abortion by Mail in the United States*, 54 Persps. on Sexual & Reprod. Health 177 (2022), https://pubmed.ncbi.nlm.nih.gov/36229416/ ..............................7

Ctr. for Drug Evaluation & Rsch., U.S. Food & Drug Admin., *REMS Modification Rationale Review* (Dec. 16, 2021), https://www.accessdata.fda.gov/drugsatfda_docs/summary_review/2023/020687Orig 1s025SumR.pdf...........................................................................................................................6

Daniel Grossman & Nisha Verma, *Self-Managed Abortion in the US*, 328 JAMA 1693 (2022), https://jamanetwork.com/journals/jama/article-abstract/2797861 ...........................12

Diana G. Foster et al., *Effects of Carrying an Unwanted Pregnancy to Term on Women's Existing Children*, 205 J. Pediatrics 183 (2019), https://www.jpeds.com/action/showPdf?pii=S0022-3476%2818%2931297-6......................12

Diana G. Foster, *The Turnaway Study: Ten Years, a Thousand Women, and the Consequences of Having—or Being Denied—an Abortion* (2020) ........................................12

Elizabeth G. Raymond & David A. Grimes, *The Comparative Safety of Legal Induced Abortion and Childbirth in the United States*, 119 Obstetrics & Gynecology 215 (2012), http://unmfamilyplanning.pbworks.com/w/file/fetch/119312553/Raymond%20et%20 al-Comparative%20Safety.pdf................................................................................................12

Elizabeth Kim, *NYC Will Offer Free Abortion Pills at 4 City-Run Sexual Health Clinics*, Gothamist (Jan. 17, 2023), https://gothamist.com/news/nyc-will-offer-free-abortion-pills-at-four-city-run-sexual-health-clinics ...........................................................................10

Elyssa Spitzer et al., *Abortion Bans Will Result in More Women Dying*, Ctr. for Am. Progress (Nov. 2, 2022), https://www.americanprogress.org/article/abortion-bans-will-result-in-more-women-dying/ ..................................................................................12

Heidi D. Nelson et al., *Associations of Unintended Pregnancy with Maternal and Infant Health Outcomes: A Systematic Review and Meta-Analysis*, 328 JAMA 1714 (2022), https://jamanetwork.com/journals/jama/fullarticle/2797874.................................................12

v

**Miscellaneous Authorities**                                                                                          **Page(s)**

Jane W. Seymour et al., *Potential Impact of Telemedicine for Medication Abortion Policy and Programming Changes on Abortion Accessibility in the United States*, 112 Am. J. Pub. Health 1202 (2022), https://pmc.ncbi.nlm.nih.gov/articles/PMC9342822/pdf/AJPH.2022.306876.pdf...................6

Jenna Jerman et al., *Barriers to Abortion Care and Their Consequences for Patients Traveling for Services: Qualitative Findings from Two States*, 49 Persps. on Sexual & Reprod. Health 95 (2017), https://onlinelibrary.wiley.com/doi/epdf/10.1363/psrh.12024 .................................9

Jessica Beaman et al., *Medication to Manage Abortion and Miscarriage*, 35 J. Gen. Internal Med. 2398 (2020), https://dx.doi.org/10.1007/s11606-020-05836-9 ...........................3

Julia Strasser et al., *Penalizing Abortion Providers Will Have Ripple Effects Across Pregnancy Care*, Health Affs. (May 3, 2022), healthaffairs.org/do/10.1377/forefront.20220503.129912/.......................................13

Justin J. Chu et al., *Mifepristone and Misoprostol Versus Misoprostol Alone for the Management of Missed Miscarriage (MifeMiso): A Randomised, Double-Blind, Placebo-Controlled Trial*, 396 Lancet 770 (2020), https://www.pure.ed.ac.uk/ws/portalfiles/portal/171906498/1_s2.0_S0140673620317888_main.pdf .................................................................................................3

Kanya D'Almeida, *Telemedicine Abortion Care Is Coming to Maine*, Rewire News Grp. (Feb. 29, 2016), https://rewirenewsgroup.com/2016/02/29/telemedicine-abortion-care-coming-maine/ ...........................................................................................9

KFF, *California Abortion Data* (n.d.), https://www.kff.org/interactive/womens-health-profiles/california/abortion-statistics/ .......................................................................4

Lauren J. Ralph et al., *Comparison of No-Test Telehealth and In-Person Medication Abortion*, 332 JAMA 898 (June 24, 2024), https://jamanetwork.com/journals/jama/fullarticle/2820321 ...................................7

Leah R. Koenig et al., *Mailing Abortion Pills Does Not Delay Care: A Cohort Study Comparing Mailed to In-Person Dispensing of Abortion Medications in the United States*, 121 Contraception, no. 109962 (2023), https://www.contraceptionjournal.org/action/showPdf?pii=S0010-7824%2823%2900015-X......................................................................................7

Liza Fuentes & Jenna Jerman, *Distance Traveled to Obtain Clinical Abortion Care in the United States and Reasons for Clinic Choice*, J. Women's Health 1623 (2019), https://pmc.ncbi.nlm.nih.gov/articles/PMC6919239/pdf/jwh.2018.7496.pdf .........................9

**Miscellaneous Authorities**                                                                                              **Page(s)**

Liza Fuentes, Guttmacher Inst., *Inequity in US Abortion Rights and Access: The End of Roe Is Deepening Existing Divides* (Jan. 17, 2023), https://www.guttmacher.org/2023/01/inequity-us-abortion-rights-and-access-end-roe-deepening-existing-divides ................................................................................................... 13

Margot Sanger-Katz et al., *Interstate Abortion Travel Is Already Straining Parts of the System*, N.Y. Times (July 23, 2022), https://www.nytimes.com/2022/07/23/upshot/abortion-interstate-travel-appointments.html ........................................................................................................ 11

Maria W. Steenland et al, *Pregnancy- and Abortion-Related Mortality in the US, 2018-2021*, 9 JAMA Netw. Open, no. e2554793 (2026), https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2844131 ............................ 12

Mary Gatter et al., *Efficacy and Safety of Medical Abortion Using Mifepristone and Buccal Misoprostol Through 63 Days*, 91 Contraception 269 (2015), https://pmc.ncbi.nlm.nih.gov/articles/PMC4373977/pdf/nihms662931.pdf ........................... 5

Mass. Dep't Public Health, *Massachusetts Induced Termination of Pregnancy 2023* (Nov. 2024), https://www.mass.gov/doc/massachusetts-induced-termination-of-pregnancy-2023-pdf/download ................................................................................................ 4

Matt Bloom & Bente Berkland, *Wait Times at Colorado Clinics Hit Two Weeks as Out-of-State Patients Strain System*, KSUT (July 28, 2022), https://www.ksut.org/health-science/2022-07-28/wait-times-at-colorado-abortion-clinics-hit-2-weeks-as-out-of-state-patients-strain-system ................................................................................................ 11

Nat'l Abortion Fed'n, *2024 Clinical Policy Guidelines for Abortion Care* (2024), https://nationalabortionfederation.org/wp-content/uploads/2024-CPGs-FINAL-1.pdf ........... 8

Nat'l Acads. of Scis., Eng'g & Med., *The Safety and Quality of Abortion Care in the United States* 5 (2018), https://www.nationalacademies.org/read/24950/chapter/1 ............. 4-6

Oriana González & Nicole Cobler, *Influx of Out-of-State Patients Causes Abortion Delays*, Axios (Sept. 12, 2022), https://www.axios.com/local/austin/2022/09/12/texans-out-of-state-patients-abortions-delays .................................................................................................... 11

Pet. of Am. Coll. of Obstetricians & Gynecologists et al. (Jan. 31, 2025), FDA-2025-P-0377, https://www.regulations.gov/document/FDA-2025-P-0377-0001 .................................. 5

Pet. of Andrea Joy Campbell, Att'y Gen. of Mass., et al. (June 5, 2025), FDA-2025-P-1576-0001, https://www.regulations.gov/document/FDA-2025-P-1576-0001/ ....................... 5

**Miscellaneous Authorities**                                              **Page(s)**

Pet. of Nick Brown, Att'y Gen. of Wash., et al (Aug. 20, 2025), FDA-2025-P-3287-0001,
    https://www.regulations.gov/document/FDA-2025-P-3287-0001 ............................................5

Rachel K. Jones et al., Guttmacher Inst., *Medication Abortion Accounted for 63% of All
    US Abortions in 2023—An Increase from 53% in 2020* (Mar. 19, 2024),
    https://www.guttmacher.org/2024/03/medication-abortion-accounted-63-all-us-
    abortions-2023-increase-53-2020 ...............................................................................4

Rachel K. Jones & Jenna Jerman, Guttmacher Inst., *Time to Appointment and Delays in
    Accessing Care Among U.S. Abortion Patients* (Aug. 2016),
    https://www.guttmacher.org/sites/default/files/report_pdf/delays-in-accessing-
    care.pdf.............................................................................................................9

Samantha P. Ruggiero et al., *Patient and Provider Experiences Using a Site-to-Site
    Telehealth Model for Medication Abortion*, 8 Health 32 (2022),
    https://pmc.ncbi.nlm.nih.gov/articles/PMC9634192/pdf/mh-08-22-12.pdf ...........................6

Sarah Varney, *Long Drives, Air Travel, Exhausting Waits: What Abortion Requires in the
    South*, KFF Health News (Aug. 3, 2021),
    https://kffhealthnews.org/news/article/abortion-in-south-requires-travel-long-waits/ ..............9

Silpa Srinivasulu et al., *Telehealth Medication Abortion in Primary Care: A Comparison
    to Usual in-Clinic Care*, 37 J. Am. Bd. Fam. Med. 295 (2024),
    https://www.jabfm.org/content/jabfp/37/2/295.full.pdf.........................................................7

Soc'y of Fam. Plan., *#WeCount Report, April 2022 to June 2025* (Dec. 9, 2025),
    https://societyfp.org/wp-content/uploads/2025/12/WeCount-Report-10-June-2025-
    data.pdf...........................................................................................................8, 11

Theresa Chalhoub & Kelly Rimar, *The Health Care System and Racial Disparities in
    Maternal Mortality*, Ctr. for Am. Progress (May 10, 2018),
    https://www.americanprogress.org/article/health-care-system-racial-disparities-
    maternal-mortality/ .............................................................................................13

U.S. Food & Drug Admin., *Mifepristone U.S. Post-Marketing Adverse Events Summary
    Through 12/31/2024* (n.d.), https://www.fda.gov/media/185245/download ...........................4

U.S. Food & Drug Admin., *Information About Mifepristone for Medical Termination of
    Pregnancy Through Ten Weeks Gestation* (last updated Jan. 17, 2025),
    https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-
    providers/information-about-mifepristone-medical-termination-pregnancy-through-
    ten-weeks-gestation.............................................................................................3

**Miscellaneous Authorities**                                                                 **Page(s)**

Ushma D. Upadhyay et al., *Effectiveness and Safety of Telehealth Medication Abortion in the USA*, 30 Nature Med. 1191 (2024), https://www.nature.com/articles/s41591-024-02834-w ...................................................................................................7

Ushma D. Upadhyay et al., *Outcomes and Safety of History-Based Screening for Medication Abortion: A Retrospective Multicenter Cohort Study*, 182 JAMA Intern. Med. 482 (2022), https://scispace.com/pdf/outcomes-and-safety-of-history-based-screening-for-2amfp0v8.pdf ...................................................................................7

Ushma D. Upadhyay et al., *Pricing of Medication Abortion in the United States, 2021-2023*, 56 Persps. on Sexual & Reprod. Health 282 (2024), https://onlinelibrary.wiley.com/doi/epdf/10.1111/psrh.12280 ...................................................9

Ushma D. Upadhyay et al., *Safety and Efficacy of Telehealth Medication Abortions in the US During the COVID-19 Pandemic*, 4 JAMA Netw. Open, no. e2122320 (2021), https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2783451 ...............................7

World Health Org., *Abortion Care Guideline* (2022), https://iris.who.int/server/api/core/bitstreams/59a704cc-4024-412a-97d9-55d86d139602/content...........................................................................................................5

World Health Org., *WHO Model List of Essential Medicines - 22nd List, 2021* (Sept. 30, 2021), https://www.who.int/publications/i/item/WHO-MHP-HPS-EML-2021.02...................5

## INTRODUCTION AND INTERESTS OF AMICI

Amici States of New York, Arizona, California, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, Washington, and the District of Columbia submit this brief in opposition to plaintiffs' motion for a nationwide "stay" of defendant U.S. Food and Drug Administration's determination to eliminate the in-person dispensing requirement for the medication mifepristone. Amici write to offer their unique perspective on the harmful consequences to our residents if plaintiffs' motion for preliminary relief is granted and to explain how these concerns should inform the Court's analysis of the equitable considerations underlying plaintiffs' request.

When used in combination with the drug misoprostol, mifepristone is the only drug approved for termination of pregnancy. Mifepristone has been widely and safely used for more than two decades in the United States and across the world. The regulatory removal of unnecessary restrictions on mifepristone, including the in-person dispensing requirement, has proven crucial to amici in improving abortion access for their residents, particularly in low-income, underserved, and rural communities, which experience higher rates of birth-related mortality and morbidity, and where access to healthcare is generally far more limited. Mifepristone is also a preferred method for managing early pregnancy loss, and many patients experiencing miscarriages have benefited from the ability to receive treatment by telemedicine.

Amici States therefore have a strong interest in preserving the availability of telemedicine access to mifepristone specifically, and in ensuring high-quality, science-driven patient care within their borders more generally. Many amici operate public hospitals, clinics, and other facilities that provide health care and pharmaceutical services and run public universities that provide health care services to their employees and students. Through their elected officials, amici States also act

to protect and promote the health, safety, and welfare of their residents. The continued availability of mifepristone, in accordance with sound medical guidelines, is therefore critical to safeguarding amici States' important interest in protecting the health, safety, and rights of their residents to access essential reproductive health care.

Plaintiffs' motion is chiefly predicated on their disagreement with the legislative and policy judgments of states that have chosen to expand rather than to restrict access to abortion following the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). After *Dobbs*, many states, including several amici, enacted constitutional and statutory measures codifying the right to abortion under state law, directed funding toward expanding capacity and upgrading facilities to meet increased demand, and passed laws intended to support persons seeking and providing abortion care within their jurisdictions. Several such initiatives have focused specifically on increasing access to medication abortion, in light of its unique benefits and accessibility. According to plaintiffs, a nationwide "stay" of the FDA's elimination of the in-person dispensing requirement for mifepristone is necessary to support the enforcement of state laws *prohibiting* abortion because other States have passed laws that *protect* access to abortion.

Plaintiffs' argument is misguided because the FDA has no role to play in the enforcement of state laws; the agency's statutory authority is limited to evaluating the safety and efficacy of medications. More fundamentally, plaintiffs' requested relief runs roughshod over the Supreme Court's recognition in *Dobbs* that "the people of the various States may evaluate" the interests of a woman who wants an abortion and the interests in fetal life differently, 597 U.S. at 256, and the Court's determination to "return the issue of abortion to the people's elected representatives," *id.* at 232. Amici's efforts to protect and expand access to abortion more generally, and to medication abortion specifically, are a result of the "constitutional processes of democratic self-government,"

2

*id.* at 346 (Kavanaugh, J., concurring). Ultimately, such laws and policies represent a value judgment that the privacy, bodily autonomy, and dignity of all pregnant people include the ability to decide whether to continue or terminate a pregnancy free from government interference. Plaintiffs ask the court and the FDA to place a federal thumb on the scale in favor of states that have made contrary policy choices, but that is the exact opposite of what the Supreme Court directed in *Dobbs*.

## ARGUMENT

### I.    MEDICATION ABORTION IS A SAFE AND EFFECTIVE METHOD FOR TERMINATING PREGNANCIES.

By the age of forty-five, approximately one in four women in the United States will have had an abortion and at least as many will have had a miscarriage.[1] Mifepristone, in a regimen with misoprostol, is the standard and only FDA-approved method to terminate a pregnancy through ten weeks' gestation,[2] and it is commonly used by physicians to complete the termination of a pregnancy once a miscarriage has begun.[3] Although both procedural abortion and medication abortion are extremely safe, and individuals may choose one or the other option for different reasons, medication abortion offers significant benefits in terms of flexibility, privacy, and accessibility. Among other benefits, medication abortion promotes access to abortion as early as

---

[1] Jessica Beaman et al., *Medication to Manage Abortion and Miscarriage*, 35 J. Gen. Internal Med. 2398, 2398 (2020); *see* Am. Coll. of Obstetricians & Gynecologists, *Early Pregnancy Loss: Frequently Asked Questions* (last updated Sept. 2024) ("How common is early pregnancy loss?"). (For authorities available online, full URLs appear in the table of authorities. All websites were last visited on February 20, 2026.)

[2] *See* U.S. Food & Drug Admin., *Information About Mifepristone for Medical Termination of Pregnancy Through Ten Weeks Gestation* (last updated Jan. 17, 2025).

[3] Courtney A. Schreiber et al., *Mifepristone Pretreatment for the Medical Management of Early Pregnancy Loss*, 378 N. Engl. J. Med. 2161, 2169 (2018); Justin J. Chu et al., *Mifepristone and Misoprostol Versus Misoprostol Alone for the Management of Missed Miscarriage (MifeMiso): A Randomised, Double-Blind, Placebo-Controlled Trial*, 396 Lancet 770, 777 (2020).

possible, when it is safest and least expensive, and has contributed to an increase in the proportion of pregnancy terminations taking place earlier than six weeks gestation.[4]

Given that the majority of abortions occur in the first trimester, the majority of U.S. women seeking abortion care do so within the gestational age for which they are eligible to obtain a medication abortion.  Since its approval in 2000, an estimated 7.5 million people in the U.S. have used mifepristone to terminate a pregnancy,[5] and medication abortion now accounts for 63% of all abortions performed in the formal U.S. health system nationwide.[6] In many states, including in several amici States, the use of medication abortion is even higher. For instance, in 2023, approximately 64% of the abortions performed in Massachusetts and 71% of the abortions performed in California were done by medication.[7]

The extensive experience of many of the amici States confirms what numerous scientific studies have demonstrated: mifepristone is extraordinarily safe and effective and an integral component of reproductive health care. A comprehensive survey of abortion care in the U.S. by the National Academies of Sciences, Engineering, and Medicine in 2018 concluded that medication abortion involving mifepristone is 96.7% effective and that complications are rare, i.e., "occurring

---

[4] *See* Nat'l Acads. of Scis., Eng'g & Med. (NASEM), *The Safety and Quality of Abortion Care in the United States* 5, 28-29 (2018).

[5] *See* U.S. Food & Drug Admin., *Mifepristone U.S. Post-Marketing Adverse Events Summary Through 12/31/2024* (n.d.).

[6] Rachel K. Jones et al., Guttmacher Inst., *Medication Abortion Accounted for 63% of All US Abortions in 2023—An Increase from 53% in 2020* (Mar. 19, 2024).

[7] *See* Mass. Dep't Public Health, *Massachusetts Induced Termination of Pregnancy 2023*, at 5 (Nov. 2024); KFF, *California Abortion Data* (n.d.).

4

in no more than a fraction of a percent of patients."[8] The World Health Organization includes the mifepristone/misoprostol regimen in its guidelines for abortion care,[9] and has long included the combination regimen in its Model List of Essential Medicines—i.e., those medicines "that satisfy the priority health care needs of a population" and "are intended to be available in functioning health systems at all times."[10]

Mifepristone's safety record is so conclusive that leading medical associations, as well as several amici, have advocated that the FDA's Risk Evaluation and Mitigation Strategy (REMS) designation for the drug be eliminated altogether, viewing it as outdated and medically unjustified.[11] And in October 2025, a federal district court in Hawai'i held that the FDA's decision to retain certain prescribing and dispensation restrictions on mifepristone was arbitrary and capricious because of the overwhelming record of the drug's safety and efficacy, and remanded to the agency without vacatur for a new analysis. *See Purcell v. Kennedy*, No. 1:17-cv-493, 2025 WL 3101785, at *2 (D. Haw. Oct. 30, 2025).

Years of clinical use have also shown that mifepristone can safely be provided in a variety of contexts and practice areas, including, for example, in a private physician's office, an obstetrician-gynecologist or family practice setting, or at home under appropriate medical

---

[8] *See* NASEM, *supra*, at 53, 55; *see* Mary Gatter et al., *Efficacy and Safety of Medical Abortion Using Mifepristone and Buccal Misoprostol Through 63 Days*, 91 Contraception 269 [at 2-3] (2015) (author manuscript).

[9] *See* World Health Org., *Abortion Care Guideline* xxix, 16-17, 67-68 (2022).

[10] World Health Org., *WHO Model List of Essential Medicines - 22nd List, 2021* (Sept. 30, 2021).

[11] *See, e.g.*, Pet. of Am. Coll. of Obstetricians & Gynecologists et al. 2 (Jan. 31, 2025), FDA-2025-P-0377; Pet. of Andrea Joy Campbell, Att'y Gen. of Mass., et al. 2 (June 5, 2025), FDA-2025-P-1576-0001; Pet. of Nick Brown, Att'y Gen. of Wash., et al. 2 (Aug. 20, 2025), FDA-2025-P-3287-0001; *see also* Am. Coll. of Obstetricians & Gynecologists, *Leading Medical Organizations Reaffirm the Safety of Mifepristone* (May 22, 2025).

supervision, offering added flexibility, privacy, and security for both patients and providers.[12] As the FDA observed, mifepristone's safety record is "well-characterized" and "has not changed over the period of surveillance."[13]

## II.  THE ELIMINATION OF THE IN-PERSON DISPENSING REQUIREMENT IS SUPPORTED BY CLINICAL DATA AND HAS HELPED EXPAND ACCESS TO CRITICAL HEALTHCARE IN UNDERSERVED COMMUNITIES.

The FDA's decision to remove the in-person dispensing requirement was amply supported by scientific data and consistent with the agency's statutory obligation to remove unnecessary barriers to medication access. *See* 21 U.S.C. § 355-1(f)(2). The decision was backed by an extensive literature review,[14] as well as mifepristone's stable safety record during the COVID-19 pandemic when the agency forbore from enforcing the in-person dispensing requirement. Subsequent research has shown no change in mifepristone's safety profile following changes to mifepristone's labeling, prescribing, and dispensing requirements, including the elimination of the in-person dispensing requirement.

Indeed, numerous studies have further confirmed that medication abortion care provided by telehealth is highly safe and effective,[15] and that patients are highly satisfied with telehealth

---

[12] *See* NASEM, *supra*, at 10, 58.

[13] Ctr. for Drug Evaluation & Rsch., U.S. Food & Drug Admin., *REMS Modification Rationale Review* 15 (Dec. 16, 2021); *see also* Citizen Pet. Response Letter from Ctr. for Drug Evaluation & Rsch., U.S. Food & Drug Admin., to Am. Ass'n of Pro-Life Obstetricians & Gynecologists & Am. Coll. of Pediatricians at 20 (Dec. 16, 2021).

[14] Ctr. for Drug Evaluation & Rsch., U.S. Food & Drug Admin., *REMS Modification Rationale Review*, *supra*, at 24-36 (discussing studies).

[15] *See, e.g.*, Jane W. Seymour et al., *Potential Impact of Telemedicine for Medication Abortion Policy and Programming Changes on Abortion Accessibility in the United States*, 112 Am. J. Pub. Health 1202, 1202-10 (2022); Samantha P. Ruggiero et al., *Patient and Provider Experiences Using a Site-to-Site Telehealth Model for Medication Abortion*, 8 Health 32 (2022);

(*continued on the next page*)

medication abortion care.[16] For example, one study of nearly 3,800 patients who received medication abortion either in-person or through telehealth "found high effectiveness and safety rates" overall, with "similarly high effectiveness and safety rates comparing patients who received medications in-person vs by mail."[17] Another study of over 6,000 patients who obtained medication abortion via telehealth between April 2021 to January 2022 found an overall effectiveness rate of 97.7% and an overall safety rate of 99.7%.[18] A 2024 study likewise concluded that telehealth medication abortion is "as effective, timelier, and potentially more accessible than in-clinic care."[19] Given this overwhelming weight of evidence, numerous medical organizations including the National Abortion Federation, the American College of Obstetricians and Gynecologists, and the Society of Family Planning have issued clinical practice guidelines supporting the provision of telehealth

---

Abigail R.A. Aiken et al., *Safety and Effectiveness of Self-Managed Medication Abortion Provided Using Online Telemedicine in the United States: A Population Based Study*, 10 Lancet Reg'l Health - Americas, no. 100200, at 1-7 (2022); Ushma D. Upadhyay et al., *Outcomes and Safety of History-Based Screening for Medication Abortion: A Retrospective Multicenter Cohort Study*, 182 JAMA Intern. Med. 482, 488-89 (2022); Ushma D. Upadhyay et al., *Safety and Efficacy of Telehealth Medication Abortions in the US During the COVID-19 Pandemic*, 4 JAMA Netw. Open, no. e2122320, at 1-2 (2021).

[16] *See, e.g.*, Courtney Kerestes et al., *Person-Centered, High-Quality Care from a Distance: A Qualitative Study of Patient Experiences of TelAbortion, a Model for Direct-to-Patient Medication Abortion by Mail in the United States*, 54 Persps. on Sexual & Reprod. Health 177, 177-87 (2022); Leah R. Koenig et al., *Mailing Abortion Pills Does Not Delay Care: A Cohort Study Comparing Mailed to In-Person Dispensing of Abortion Medications in the United States*, 121 Contraception, no. 109962, at 1-15 (2023).

[17] Upadhyay et al., *Outcomes and Safety of History-Based Screening for Medication Abortion*, *supra*, at 488-89; *see also* Lauren J. Ralph et al., *Comparison of No-Test Telehealth and In-Person Medication Abortion*, 332 JAMA 898, 898-904 (June 24, 2024).

[18] Ushma D. Upadhyay et al., *Effectiveness and Safety of Telehealth Medication Abortion in the USA*, 30 Nature Med. 1191, 1191-97 (2024).

[19] Silpa Srinivasulu et al., *Telehealth Medication Abortion in Primary Care: A Comparison to Usual in-Clinic Care*, 37 J. Am. Bd. Fam. Med. 295, 299 (2024).

medication abortion care.[20] While a majority of abortions in the U.S. health system still occur in person, a growing number—27% in 2025—now take place via telemedicine.[21]

The FDA's elimination of the in-person dispensing requirement was also consistent with the agency's statutory obligation to ensure that any restrictions on approved medications impose minimal burdens on access, particularly for those patients "who have difficulty accessing health care (such as patients in rural or medically underserved areas)," and on the health care delivery system as a whole. *See* 21 U.S.C. § 355-1(f)(2). Removal of the requirement has allowed clinicians to offer medication abortion services remotely, where otherwise lawful, by conducting patient intake, examination, and follow-up via telephone or videoconference and enabling patients to obtain the medication through certified mail-order or certified retail pharmacies.[22] Elimination of the in-person dispensing requirement has also enabled clinicians in brick-and-mortal clinics to prescribe the

---

[20] Nat'l Abortion Fed'n, *2024 Clinical Policy Guidelines for Abortion Care* 1 (2024) (explaining that "[t]elemedicine can be safely used to provide abortion care, including medication abortion provision, informed consent, and follow-up"); Am. Coll. of Obstetricians & Gynecologists & Soc'y of Fam. Plan., Prac. Bull. No. 225, *Medication Abortion Up to 70 Days of Gestation*, 136 Obstetrics & Gynecology e31, e35 (2020, reaff'd 2023) ("Medication abortion can be provided safely and effectively by telemedicine with a high level of patient satisfaction, and telemedicine improves access to early abortion care, particularly in areas that lack a health care practitioner.").

[21] Soc'y of Fam. Plan., *#WeCount Report, April 2022 to June 2025* 1 (Dec. 9, 2025).

[22] Plaintiffs assert that the federal Comstock Act prohibits the distribution of mifepristone by mail. *See* Pls.' Mem. of Law in Support of Mot. for Prelim. Relief at 13-14 (Dec. 17, 2025), ECF No. 20-26. Although a discussion of the Comstock Act is beyond the scope of this brief, amici States note that plaintiffs' interpretation of the Comstock Act has been expressly rejected as having potentially boundless effects on medical care delivery, ostensibly preventing distribution of a host of devices, surgical instruments, and equipment used in obstetrics and gynecology and beyond, as well as numerous drugs routinely used to treat countless diseases and conditions. *See, e.g.*, *Youngs Rubber Corp. v. C. I. Lee & Co.*, 45 F.2d 103, 108 (2d Cir. 1930); Application of the Comstock Act to the Mailing of Prescription Drugs That Can Be Used for Abortions, 46 Op. O.L.C. (Dec. 23, 2022) (slip op. at 1-2).

medication to patients in person for pick-up by the patient at a pharmacy, eliminating the need to keep a supply of the medications on-site.

These changes have been critical to extending access for amici's residents in rural and underserved communities where barriers to abortion and other forms of healthcare are most acute.[23] The availability of abortion care by telehealth has reduced the impact of many practical and cost barriers that can make it difficult for many people to obtain an abortion—including childcare needs, missed work and resulting lost income, lack of insurance coverage, and travel costs and logistics, all of which increase with distance traveled.[24] Telehealth is also generally less expensive than in-person care. As one study found, "[t]he median cost of a medication abortion offered in-person increased from $580 in 2021 to $600 by 2023," while "[t]he median price of a medication abortion offered by virtual clinics decreased from $239 in 2021 to $150 in 2023."[25]

Many state and local governments, including in many amici States, have expended substantial resources to increase access to mifepristone, both through in-person care and via telemedicine. In Maine, which has among the highest rates of rural residents in the U.S., a major clinic chain has made medication abortion available at its health centers via telemedicine.[26] New

---

[23] Liza Fuentes & Jenna Jerman, *Distance Traveled to Obtain Clinical Abortion Care in the United States and Reasons for Clinic Choice*, 28 J. Women's Health 1623, 1627 (2019).

[24] *See id.* at 1623-24; Sarah Varney, *Long Drives, Air Travel, Exhausting Waits: What Abortion Requires in the South*, KFF Health News (Aug. 3, 2021); Jenna Jerman et al., *Barriers to Abortion Care and Their Consequences for Patients Traveling for Services: Qualitative Findings from Two States*, 49 Persps. on Sexual & Reprod. Health 95, 98 (2017); Rachel K. Jones & Jenna Jerman, Guttmacher Inst., *Time to Appointment and Delays in Accessing Care Among U.S. Abortion Patients* (Aug. 2016).

[25] Ushma D. Upadhyay et al., *Pricing of Medication Abortion in the United States, 2021-2023*, 56 Persps. on Sexual & Reprod. Health 282, 282 (2024).

[26] *See* Kanya D'Almeida, *Telemedicine Abortion Care Is Coming to Maine*, Rewire News Grp. (Feb. 29, 2016).

York City offers free medication abortion at several public health clinics serving primarily low-income New Yorkers.[27] And several amici States, including Massachusetts, New York, and California, have taken steps to extend access to public university students by making medication abortion available through campus health centers.[28] In addition, nearly seventy virtual clinics in twenty-three States and the District of Columbia currently offer medication abortion via tele-medicine.[29]

### III.    PLAINTIFFS' REQUESTED RELIEF WOULD INTERFERE WITH AMICI STATES' ABILITY TO PROVIDE HEALTHCARE TO THEIR RESIDENTS.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). And "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences" of employing such remedy. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Here, the consequences of plaintiffs' requested nationwide "stay" of the FDA's elimination of an in-person dispensing requirement that has not been enforced since 2021 would have a "needlessly chaotic and disruptive effect," *Benisek v. Lamone*, 585 U.S. 155, 161 (2018) (quotation marks omitted), especially in amici States. If granted, plaintiffs' requested relief would increase costs to amici's health systems, harm amici's residents, and undermine amici's sovereign policy decisions.

---

[27] *See* Elizabeth Kim, *NYC Will Offer Free Abortion Pills at 4 City-Run Sexual Health Clinics*, Gothamist (Jan. 17, 2023).

[28] *See* N.Y. Education Law § 6438-b; Mass. Gen. Laws ch. 15A, § 46; Cal. Educ. Code § 99251.

[29] *See* Advancing New Standards in Reprod. Health (ANSIRH), Issue Brief, *Availability of Telehealth Services for Medication Abortion in the U.S., 2020-2022*, at 2 (June 2023).

As explained above, over a quarter of abortions in the United States currently take place via telemedicine,[30] and many states and private providers have invested resources and established infrastructure to offer medication abortion via telemedicine. Reinstating the requirements of in-person dispensing would effectively eliminate access via telemedicine, wiping virtual clinics off the map and reimposing travel-related costs and delays on amici's residents. These burdens are especially notable for amici States, many of whom have experienced a steep rise in demand at clinics from out-of-state patients after *Dobbs*.[31] While providers have endeavored to meet the increased demand, the influx has stretched clinics past their already-strained capacity and has dramatically increased wait times for patients from both within and outside of their States.[32] Eliminating access to medication abortion via telemedicine would deprive amici States of a critical tool in expanding capacity to meet this demand.

With mifepristone access out of reach via telemedicine, many patients would likely seek procedural abortions—which, although safe, are generally more costly and constitute unnecessarily invasive procedures for those who would have preferred a medication abortion. Others desperate for care may choose to self-manage their abortions outside of a mainstream medical setting, seeking

---

[30] *See* Amelia Thomson-DeVeaux, *Virtual Abortions Surged After Roe Was Overturned— But the Texas Ruling Could Change That*, FiveThirtyEight (Apr. 11, 2023); Soc'y of Fam. Plan., *supra,* at 1; ANSIRH, *supra,* at 1-2.

[31] *See* Soc'y of Fam. Plan., *supra*, at 3-4.

[32] *See* Margot Sanger-Katz et al., *Interstate Abortion Travel Is Already Straining Parts of the System*, N.Y. Times (July 23, 2022); Angie Leventis Lourgos, *Abortions in Illinois for Out-of-State Patients Have Skyrocketed. And Some Wait Times Are Exceeding Three Weeks*, Chi. Trib. (Aug. 2, 2022); Oriana González & Nicole Cobler, *Influx of Out-of-State Patients Causes Abortion Delays*, Axios (Sept. 12, 2022); Matt Bloom & Bente Berkland, *Wait Times at Colorado Clinics Hit Two Weeks as Out-of-State Patients Strain System*, KSUT (July 28, 2022).

11

abortion medication from overseas pharmacies or other informal sources.[33] And many will be denied access to abortion altogether and be forced to carry unwanted, and in some cases medically risky, pregnancies to term.

Denial of abortion care is in turn associated with numerous harms, including poor birthing and infant health outcomes, higher rates of poverty, and lower educational attainment for both parents and children.[34] For example, because carrying a pregnancy to term is fourteen times more risky than early abortion,[35] reinstating obstacles to accessing medication abortion would likely lead to a steep rise in birth-related mortality rates purely due to the increased risks associated with giving birth, worsening a crisis already disproportionately faced by Black women.[36]

To be sure, there have long been practical and financial obstacles to obtaining abortion care. But the threats to and ultimate loss of a federal constitutional right to abortion brought those

---

[33] *See* Abigail R.A. Aiken et al., *Requests for Self-Managed Medication Abortion Provided Using Online Telemedicine in 30 US States Before and After the* Dobbs v. Jackson Women's Health Organization *Decision*, 328 JAMA 1768, 1768-70 (2022); Daniel Grossman & Nisha Verma, *Self-Managed Abortion in the US*, 328 JAMA 1693, 1693-94 (2022).

[34] *See, e.g.*, Diana G. Foster, *The Turnaway Study: Ten Years, a Thousand Women, and the Consequences of Having—or Being Denied—an Abortion* (2020); Diana G. Foster et al., *Effects of Carrying an Unwanted Pregnancy to Term on Women's Existing Children*, 205 J. Pediatrics 183, 187-88 (2019); Heidi D. Nelson et al., *Associations of Unintended Pregnancy with Maternal and Infant Health Outcomes: A Systematic Review and Meta-Analysis*, 328 JAMA 1714, 1727-29 (2022).

[35] Elizabeth G. Raymond & David A. Grimes, *The Comparative Safety of Legal Induced Abortion and Childbirth in the United States*, 119 Obstetrics & Gynecology 215, 216-18 (2012); *see also* Maria W. Steenland et al, *Pregnancy- and Abortion-Related Mortality in the US, 2018-2021*, 9 JAMA Netw. Open, no. e2554793, at 4-5 (2026).

[36] *See* Elyssa Spitzer et al., *Abortion Bans Will Result in More Women Dying*, Ctr. for Am. Progress (Nov. 2, 2022); Amanda Jean Stevenson, *The Pregnancy-Related Mortality Impact of a Total Abortion Ban in the United States: A Research Note on Increased Deaths Due to Remaining Pregnant*, 58 Demography 2019, 2023 (2021) (estimating that birth-related mortality rates would rise by 21% overall should a total abortion ban go into effect nationwide, with Black women experiencing the highest estimated increase of 33%).

inequities into sharper relief, leading many amici States to reaffirm their commitments not only to safeguarding the right to abortion, but also to dismantling barriers to accessing essential reproductive health care.[37] Allowing an unnecessary obstacle to medication abortion to take effect will frustrate those efforts and allow the harms associated with denial of abortion to proliferate in States where abortion remains lawful.

Reinstating an in-person dispensing requirement for mifepristone would also impede provision of other forms of critical health care in amici States. The same facilities that provide abortion care often offer other essential services, such as pre- and postnatal care, family planning, cancer screening, testing and treatment for sexually transmitted infections and HIV, and other forms of necessary preventative health care. Increased demand for in-person appointments for medical abortion and an increase in procedural abortions will likely delay access to all forms of care offered at those facilities, inevitably resulting in higher rates of unintended pregnancy and sexually transmitted infections, barriers to early detection and treatment for breast, ovarian, and testicular cancers and chronic diseases, and worsened overall health outcomes.[38] Underserved groups, including women of color, low-income women, people with disabilities, and LGBTQ+ individuals, will be hardest hit.[39]

---

[37] *See, e.g.*, Cal. Const. art. I, § 1.1; Cal. Health & Safety Code § 123453; 775 Ill. Comp. Stat. Ann. 55/1-1 et seq.; Me. Rev. Stat. Ann. tit. 22, § 1598; Act of July 29, 2022, Ch. 127, 2022 Mass. Acts 740; N.J. Stat. Ann. § 10:7-1; N.J. Stat. Ann. § 2A:160-14.1; N.Y. Public Health Law § 2599-aa; N.Y. Education Law § 6438-b; Vt. Stat. Ann. tit. 18, § 9493 et seq.

[38] *See* Julia Strasser et al., *Penalizing Abortion Providers Will Have Ripple Effects Across Pregnancy Care*, Health Affs. (May 3, 2022).

[39] *See* Liza Fuentes, Guttmacher Inst., *Inequity in US Abortion Rights and Access: The End of Roe Is Deepening Existing Divides* (Jan. 17, 2023); Theresa Chalhoub & Kelly Rimar, *The Health Care System and Racial Disparities in Maternal Mortality*, Ctr. for Am. Progress (May 10, 2018); Christine Dehlendorf et al., *Disparities in Family Planning*, 202 Am. J. Obstetrics & Gynecology 214, 215 (2010).

While plaintiffs assert that reinstatement of the in-person dispensing requirement is necessary to protect the sovereign interests of States that have decided to restrict access to abortion (*see* Pls.' Mem. of Law in Support of Mot. for Prelim. Relief at 18-21 (Dec. 17, 2025), ECF No. 20-26), that argument is mistaken in several respects. First, the FDA's role in determining whether and what REMS are appropriate is limited to whether a restriction "is necessary to ensure that the benefits of the drug outweigh the risks of the drug." 21 U.S.C. § 355-1(a)(1). The FDA does not—and cannot—consider the regulatory or enforcement prerogatives of individual states because the REMS do not legalize or prohibit abortion in any jurisdiction.

Second, there is no indication that the FDA eliminated the in-person dispensing requirement for the purpose of frustrating state abortion prohibitions. The in-person dispensing requirement was first suspended by court order in 2020 during the COVID-19 pandemic and then through enforcement forbearance starting in 2021—all before the Supreme Court's decision in *Dobbs* and before state abortion bans took effect. The FDA's 2021 review of mifepristone's REMS was likewise initiated prior to *Dobbs*, and there is no indication in the 2023 culmination of that review that the agency's evaluation of the in-person dispensing requirement was related to any state abortion bans.

Third, and most fundamentally, state laws protecting access to abortion in other States in no way preclude Louisiana or other similarly situated States from enforcing their own abortion laws. Plaintiffs chiefly complain about laws passed by certain States that prohibit state and local government officials and courts from enforcing out-of-state judgments for abortion care administered lawfully in the home State. Louisiana cannot complain that coequal sovereign States have declined to utilize their resources on facilitating the enforcement of Louisiana's abortion bans because "each sovereignty is free to determine what conduct shall be proscribed within its jurisdiction," and "the

14

wrong committed by violating such proscription" does not automatically cross state lines. *Farmland Dairies v. Barber*, 65 N.Y.2d 51, 56-57 (1985).

## CONCLUSION

Plaintiffs' motion for a preliminary injunction should be denied, and the complaint should be dismissed. In the alternative, the motion should be denied without prejudice, and the action should be stayed pending resolution of the FDA's ongoing regulatory review.

Dated:    New York, New York
          February 20, 2026

                                          Respectfully submitted,

                                          LETITIA JAMES
                                            *Attorney General*
                                            *State of New York*

 /s/ Jacob K. Weixler.                     .  /s/ Ester Murdukhayeva*       .
JACOB K. WEIXLER                           ESTER MURDUKHAYEVA
  *Counsel for Amici Curiae*                *Deputy Solicitor General*
                                           N.Y. Bar No. 5115399
Weixler Law LLC
3640 Magazine Street
New Orleans, LA 70015                      Barbara D. Underwood
(504) 408-2180                               *Solicitor General*
jkw@weixlerlaw.com                         Ester Murdukhayeva
                                             *Deputy Solicitor General*
                                           Galen Leigh Sherwin
                                             *Special Counsel for Reproductive Justice*
                                               *of Counsel*

                                           Office of the Attorney General
                                           28 Liberty Street
                                           New York, NY 10005
                                           (212) 416-6279
                                           Ester.Murdukhayeva@ag.ny.gov

*(Counsel listing continues on subsequent pages.)*    *Admission pro hac vice pending

15

Kristin K. Mayes
  *Attorney General*
  *State of Arizona*
2005 North Central Avenue
Phoenix, AZ 85004

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
115 South LaSalle Street
Chicago, IL 60603

ROB BONTA
  *Attorney General*
  *State of California*
1300 I Street
Sacramento, CA 95814

AARON M. FREY
  *Attorney General*
  *State of Maine*
6 State House Station
Augusta, ME 04333

PHILIP J. WEISER
  *Attorney General*
  *State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

ANTHONY G. BROWN
  *Attorney General*
  *State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capitol Avenue
Hartford, CT 0610

ANDREA JOY CAMPBELL
  *Attorney General*
  *Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

KATHLEEN JENNINGS
  *Attorney General*
  *State of Delaware*
820 N. French Street
Wilmington, DE 19801

KEITH ELLISON
  *Attorney General*
  *State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

ANNE E. LOPEZ
  *Attorney General*
  *State of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813

AARON D. FORD
  *Attorney General*
  *State of Nevada*
100 North Carson Street
Carson City, NV 89701

16

JENNIFER DAVENPORT
  *Acting Attorney General*
  *State of New Jersey*
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

CHARITY R. CLARK
  *Attorney General*
  *State of Vermont*
109 State Street
Montpelier, VT 05609

RAÚL TORREZ
  *Attorney General*
  *State of New Mexico*
408 Galisteo St.
P.O. Drawer 1508
Santa Fe, NM 87504

NICHOLAS W. BROWN
  *Attorney General*
  *State of Washington*
P.O. Box 40100
Olympia, WA 98504

DAN RAYFIELD
  *Attorney General*
  *State of Oregon*
1162 Court Street NE
Salem, OR 97301

BRIAN L. SCHWALB
  *Attorney General*
  *District of Columbia*
400 6th Street NW
Washington, D.C. 20001

PETER F. NERONHA
  *Attorney General*
  *State of Rhode Island*
150 South Main Street
Providence, RI 02903

17