**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

|  |  |
|---|---|
| THE STATE OF LOUISIANA, *et al.*,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>U.S. FOOD AND DRUG ADMINISTRATION, *et al.*,<br><br>        *Defendants*,<br><br>    and<br><br>DANCO LABORATORIES, LLC,<br><br>        *Intervenor-Defendant*. | Civ. No.: 6:25-cv-01491<br>Judge: David C. Joseph<br>Mag. Judge: David J. Ayo |

**DANCO LABORATORIES, LLC'S REPLY**
**IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..............................................................................................................1

ARGUMENT .....................................................................................................................1

    I.    Plaintiffs Lack Article III Standing.......................................................................1

        A.  Louisiana Does Not Suffer A Cognizable Sovereign Harm .........................1

        B.  Louisiana's Alleged Financial Harms Are Not Traceable To The 2023 REMS ...........2

        C.  Plaintiffs Fail To Overcome Their Other Standing Problems ......................5

    II.    Plaintiffs Fail To State An APA Claim .................................................................6

        A.  Plaintiffs Are Outside The Statutory Zones Of Interests ............................6

        B.  Plaintiffs Failed To Exhaust Administrative Remedies...............................7

        B.  Plaintiffs' Comstock Arguments Fail To State A Claim .............................8

    III.    This Dispute Is Not Ripe.......................................................................................9

CONCLUSION..................................................................................................................10

i

# TABLE OF AUTHORITIES

Page

**CASES:**

*Air Prods. & Chemicals, Inc. v. GSA*,
700 F. Supp. 3d 487 (N.D. Tex. 2023) ...................................................10

*All. for Hippocratic Med. v. FDA*,
No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023) ......................................8

*Am. Petrol. Inst. v. EPA*,
683 F.3d 382 (D.C. Cir. 2012) ...................................................9

*Bennett v. Spear*,
520 U.S. 154 (1997) ...................................................6, 7

*Bost v. Ill. State Bd. of Elections*,
146 S. Ct. 513 (2026) ...................................................4

*Cent. & S. W. Servs., Inc. v. EPA*,
220 F.3d 683 (5th Cir. 2000) ...................................................10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ...................................................5, 6

*Ctr. for Bio. Diversity v. EPA*,
937 F.3d 533 (5th Cir. 2019) ...................................................6

*Dep't of Com. v. New York,*
588 U.S. 752 (2019) ...................................................4

*Diamond Alt. Energy, LLC v. EPA*,
606 U.S. 100 (2025) ...................................................3, 4

*DM Arbor Ct., Ltd. v. City of Houston*,
988 F.3d 215 (5th Cir. 2021) ...................................................9

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ...................................................3

*El Puente v. Army Corps of Eng'rs*,
100 F.4th 236 (D.C. Cir. 2024) ...................................................10

*FCC v. NextWave Pers. Commc'ns Inc.*,
537 U.S. 293 (2003) ...................................................8

*FDA v. Alliance for Hippocratic Med.*,
602 U.S. 367 (2024) ................................................... 1-3, 4

**TABLE OF AUTHORITIES—Continued**

Page

*Harrison v. Jefferson Par. Sch. Bd.*,
78 F.4th 765 (5th Cir. 2023) ......................................................................................2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................................................................................................7

*Louisiana v. EEOC*,
705 F. Supp. 3d 643 (W.D. La. 2024)........................................................................2

*MCR Oil Tools, LLC v. DOT*,
110 F.4th 677 (5th Cir. 2024) ....................................................................................7

*Mirabelli v. Bonta*,
146 S. Ct. 797 (2026)..................................................................................................4

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010)....................................................................................................4

*Motor Vehicle Mfrs. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)......................................................................................................9

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
833 F.2d 583 (5th Cir. 1987) ....................................................................................10

*Pennzoil Co. v. FERC*,
742 F.2d 242 (5th Cir. 1984) ....................................................................................10

*Roake v. Brumley*,
No. 24-30706, 2026 WL 482555 (5th Cir. Feb. 20, 2026) .......................................9

*Seven Cnty. Infrastructure Coal. v. Eagle County*,
605 U.S. 168 (2025)....................................................................................................9

*Sierra Club v. City of San Antonio*,
115 F.3d 311 (5th Cir. 1997) ......................................................................................7

*Sierra Club v. Trump*,
929 F.3d 670 (9th Cir. 2019) ......................................................................................7

*State of Ohio ex rel. Celebrezze v. DOT*,
766 F.2d 228 (6th Cir. 1985) ......................................................................................6

*Stringer v. Whitley*,
942 F.3d 715 (5th Cir. 2019) ......................................................................................6

*Texas v. Becerra*,
623 F. Supp. 3d 696 (N.D. Tex. 2022) .......................................................................2

## TABLE OF AUTHORITIES—Continued

Page

*Texas v. United States*,
    787 F.3d 733 (5th Cir. 2015) ...................................................................................4

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) (*DAPA* decision) .................................................2, 6

*Tex. Corn Producers v. EPA*,
    141 F.4th 687 (5th Cir. 2025) ...................................................................................4

*Toca Producers v. FERC*,
    411 F.3d 262 (D.C. Cir. 2005) .................................................................................9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..................................................................................................5

*United States v. Texas*,
    599 U.S. 670 (2023) (*Priorities* decision) .......................................................1, 5, 7

*Walmart Inc. v. DOJ*,
    21 F.4th 300 (5th Cir. 2021) ....................................................................................9

*Washington v. FDA*,
    108 F.4th 1163 (9th Cir. 2024) ......................................................................2, 3, 5, 8

**STATUTES:**

21 U.S.C. § 355(b)(1)(A)(i) ............................................................................................8

21 U.S.C. § 355(d) ..........................................................................................................8

21 U.S.C. § 355-1 .......................................................................................................6, 8

21 U.S.C. § 355-1(a)(1) ..................................................................................................8

21 U.S.C. § 355-1(g)(4)(B)(ii)........................................................................................8

21 U.S.C. § 393(b)(2) .....................................................................................................8

5 U.S.C. § 706................................................................................................................10

FDA Amendments Act, Pub. L. No. 110-85, § 909(b), 121 Stat. 823 (2007)................9

**REGULATION:**

21 C.F.R. § 314.125(b) ...................................................................................................8

**OTHER AUTHORITY:**

ACOG Citizen Pet. (Oct. 4, 2022), https://perma.cc/MXL2-7A6S ................................8

**INTRODUCTION**

Plaintiffs admit that their latest response "largely mirrors" the reply they filed shortly before the February 24, 2026 hearing. ECF No. 253 n.1 (Opp'n). In fact, Plaintiffs reproduce that prior brief, ECF No. 111, nearly verbatim. But that only highlights their Complaint's fatal flaws.

As Danco detailed in its motion to dismiss and at the February hearing, Plaintiffs' standing theories are foreclosed by the Supreme Court's decisions in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) (*Alliance*) and *United States v. Texas,* 599 U.S. 670, 676 (2023) (*Priorities* decision). ECF No. 230-1 at 5-13 (MTD). Yet Plaintiffs barely even cite those cases. And their response fails to even acknowledge—much less confront—*Alliance*'s holding that "downstream" expenses related to the Food and Drug Administration's (FDA) regulation of mifepristone do not give plaintiffs Article III standing to challenge the drug's approval. 602 U.S. at 383. This refusal to meaningfully confront contrary precedent is telling. Plaintiffs ultimately urge a standing standard that follows no familiar legal framework and ignores key facts they allege.

Plaintiffs' other defenses fare no better. Plaintiffs do not fall within the relevant zone of interests; have not properly exhausted their remedies; cannot overcome the inherent defects in their Comstock challenge; and cannot show the case is ripe. Their Complaint should be dismissed.

**ARGUMENT**

**I.      Plaintiffs Lack Article III Standing.**

Plaintiffs maintain that they can establish standing to challenge the FDA's 2023 REMS based on "ongoing violations" of Louisiana's abortion laws and related "economic injuries." Resp. at 1. But they largely ignore all the authority that says otherwise.

**A.      Louisiana Does Not Suffer A Cognizable Sovereign Harm.**

Louisiana alleges no "judicially cognizable" sovereign harm. *Priorities*, 599 U.S. at 676. The State does not claim that the 2023 REMS preempts any state law or regulation. Rather, the State asserts that it is suffering sovereign harm because it faces *practical* difficulties in enforcing its abortion laws. Opp'n 7-9. But Louisiana "fails to point to 'any precedent, history, or tradition' establishing that its interest in [enforcing] compliance with its laws is the equivalent of an Article

1

III sovereign interest in maintaining its right to govern in the face of competing authority." *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 767 (5th Cir. 2023).  Only the latter creates a sovereign injury.  MTD 5-6; *see, e.g.*, *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015) (sovereign interests implicated when federal "intrusions are analogous to pressure to change state law") (*DAPA* decision).  Louisiana does not plausibly "allege that the 2023 REMS encroaches on its authority to govern, [so] it does not have standing based on" sovereign harm, as another court held in rejecting Idaho's similar argument.  *Washington v. FDA*, 108 F.4th 1163, 1177 (9th Cir. 2024).

Louisiana does not wrestle with this precedent.  Opp'n 7-8.  Instead, it continues to selectively quote the Fifth Circuit's *DAPA* decision and two district court cases to claim that some nebulous "interference" with enforcement of its laws is sufficient.  *Id.*  But both of those district court cases involved agency guidance that the courts held overrode contrary state law.  *See Texas v. Becerra*, 623 F. Supp. 3d 696, 714 (N.D. Tex. 2022) ("[T]he Guidance gives Texas hospitals and physicians license—much more, requires them—to violate Texas abortion laws."); *Louisiana v. EEOC,* 705 F. Supp. 3d 643, 652-653 (W.D. La. 2024) (agency rule "directly regulated" Louisiana and required it to provide accommodations to its employees that state law prohibited).  And federal immigration law preempted the entire *field* in *DAPA*, prohibiting states from "establish[ing] their own classifications of aliens" altogether.  809 F.3d at 153.  Louisiana is wide off that mark.

Simply put, that individuals in Louisiana and other states choose to violate Louisiana's laws does not undermine Louisiana's "lawmaking authority."  *DAPA*, 809 F.3d at 154.  Louisiana thus has no cognizable sovereign or quasi-sovereign interest at stake.  *See* MTD 6-7.

**B.    Louisiana's Alleged Financial Harms Are Not Traceable To The 2023 REMS.**

Precedent likewise forecloses Louisiana's efforts to establish standing based on "downstream" financial effects like Medicaid expenses from follow-up care or the costs to prosecute criminal violations.  *Alliance*, 602 U.S. at 383.  Both legally and factually, the 2023 REMS is simply too "far removed from [those] distant . . . ripple effects" to establish causation.  *Id.*

As Danco explained, MTD 8-9, Louisiana's claimed Medicaid costs of follow-up care are a more attenuated version of the "monetary and related injuries" related to treating "patients with

mifepristone complications" that the plaintiffs asserted in *Alliance*. 602 U.S. at 390. The Supreme Court unanimously held that any such costs are legally "too attenuated to establish standing" because "virtually all drugs come with complications, risks, and side effects," and "there is no Article III doctrine of 'doctor standing' that allows [them] to challenge general government safety regulations." *Id.* at 390-392. Under *Alliance*, the expense Louisiana incurs paying doctors to treat mifepristone complications creates no Article III standing. *See Washington*, 108 F.4th at 1174.

Danco emphasized all this during the February 24 hearing. *See, e.g.*, ECF No. 246, Tr. 10:52:28-11:02:57. Yet Louisiana still refuses to even acknowledge this key part of *Alliance*. *See* Opp'n 7, 15 (asserting that the case dealt with doctors' "conscience objections"). But ignoring whole sections of a Supreme Court opinion doesn't make them disappear. Nor do "Medicaid receipts" alter how attenuated Louisiana's theory is. Opp'n 15. Put directly: "economic injury in the form of increased costs to the state's Medicaid system" does not give states standing to challenge the 2023 REMS as a matter of law. *Washington,* 108 F.4th at 1174-76.

Louisiana's effort to establish standing based on costs the State incurs to prosecute out-of-state doctors for violating Louisiana law fails for similar reasons. Opp'n 5-6. Like their Complaint, Plaintiffs' response makes clear that Louisiana incurs those costs because other states' shield laws afford those doctors anonymity and protection. *Id.* at 6. To show causation, Louisiana must therefore demonstrate it was "predictable" that other states would enact those novel state laws because of the 2023 REMS. *See Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 112 (2025) ("Courts must distinguish the 'predictable' from the 'speculative' effects of government action" (citing *Alliance*, 602 U.S. at 383)). Plaintiffs' response does the opposite. Louisiana itself links other states' enactment of shield laws to *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), which returned the issue of abortion to state regulation. Opp'n 10-11. This underscores that neither other states' legislative responses to *Dobbs*—which they made as independent sovereigns—nor individual practitioners' decisions to act under those laws are a "predictable" response to the specific FDA action Plaintiffs challenge.

Indeed, the social media post Louisiana reproduces from California's governor perfectly illustrates that Louisiana's real complaint is with decisions by Louisiana's co-equal sovereigns—not FDA. Opp'n 6. The governor's profanity-laden refusal to extradite a doctor shows that California has made its own independent decision about whether to support enforcement of Louisiana's laws. *Id.* Louisiana can hardly have provided a more illustrative example of how the "intervening, independent act of a third party has been a necessary condition of the" harms it asserts. *Texas v. United States*, 787 F.3d 733, 752 (5th Cir. 2015). That breaks the causation chain. *Id.*

Despite all this, Louisiana insists that causation can be presumed because it is the supposed "target" of the 2023 REMS. Opp'n 13. But, as Danco explained, that claim just doesn't work temporally. *See* Tr. 10:58:01-10:59:25. The 2023 REMS formalized FDA's lifting of in-person dispensing that started in April 2021 and followed FDA's request for a REMS amendment in December 2021. *See* ECF No. 1-51. Nothing about the timing or FDA's discussion of the statutory factors for a REMS modification—all of which predated *Dobbs* returning the issue of abortion to the states—demonstrates that FDA sought to cause violations of Louisiana laws. Pointing to "some politicians tr[ying] to capitalize" does not show causation. Tr. 10:58:54-57.

More fundamentally, Louisiana misstates the relevant legal standard. As the very cases Louisiana cites make clear, an entity is the "target" of regulation when the regulation is designed to affect that entity's product—as was the case when fuel producers challenged fuel standards that forced the design and sale of more vehicles that would use less gas. *Diamond*, 606 U.S. at 116; *Tex. Corn Producers v. EPA*, 141 F.4th 687, 700 (5th Cir. 2025).[1] FDA's lifting of in-person dispensing, which again dates back to April 2021, is not analogous because it was not designed to cause violations of Louisiana laws. A plaintiff must identify nonconclusory facts that, if proved, would demonstrate the requisite causal link. *Cf. Dep't of Com. v. New York,* 588 U.S. 752, 767

---

[1] Plaintiffs also cite *Mirabelli v. Bonta*, but that interim decision merely applies the *Diamond* standard. 146 S. Ct. 797, 803 (2026) (per curiam). The other decisions they reference analyze injury-in-fact, not causation. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 155 (2010); *Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513, 519 (2026).

(2019) (extensive trial record showed that the predictable result of a census citizenship question would be the undercounting of certain households).  Here, Louisiana falls short.

That leaves Louisiana to claim that the 2023 REMS is an "indispensable ingredient" to third-party prescribers mailing drugs into Louisiana—and that causation should be presumed because those harms "would be mitigated or eliminated if the 2023 REMS were vacated."  Opp'n 11, 9.  But—as Danco detailed—this supposedly "practical" approach follows no judicially recognized causation standard.  Tr. 10:59:49-11:00:34; Opp'n 11.  Following Louisiana's reasoning, the plaintiffs would have had standing in *Clapper v. Amnesty International USA*, because enjoining the government surveillance program would eliminate any risk of injury.  568 U.S. 398, 414 (2013).  And every boundless hypothetical the Supreme Court invoked to show why the *Alliance* plaintiffs lacked standing—from doctors challenging air quality standards to firefighters suing over "relaxed building codes"—would come out the other way.  602 U.S. at 391-392.

All this is why the Ninth Circuit rightly rejected Idaho's standing on a similar theory. *Washington*, 108 F.4th at 1177.  Louisiana tries to distinguish that case based on Idaho's failure to provide *details* of its financial injury.  Opp'n 15.  But, as with its reading of *Alliance*, Plaintiffs miss half the decision.  The Ninth Circuit held that Supreme Court precedent precludes states from establishing standing based on "indirect compliance costs for state law enforcement." *Washington*, 108 F.4th at 1177; *see Priorities,* 599 U.S. at 680 n.3 ("[I]n our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending.").  Louisiana's refusal—or inability—to reckon with that holding speaks volumes.

### C.    Plaintiffs Fail To Overcome Their Other Standing Problems.

Both in its papers and at the February 24 hearing, Danco separately explained that Count II of Plaintiffs' Complaint is unreviewable because it seeks to functionally direct the Executive's "enforcement" of criminal prohibitions in the Comstock Act. *Priorities*, 599 U.S. at 678-681; *see* MTD at 11-12; Tr. 11:00:39-11:01:48.  Plaintiffs ignore this argument.  Because "plaintiffs must demonstrate standing for each claim that they press," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), this failure should be construed as forfeiture of any showing of standing on Count II.

5

*See, e.g.*, *Ctr. for Bio. Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019) ("Arguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived.").

Plaintiffs fail to show that Ms. Markezich has standing either. They insist that the injury she asserts would not have occurred with an in-person dispensing requirement, Opp'n 16-17, but that is not even the standard for causation when it comes to *past* injuries. *Supra* p.5. In any event, those arguments do not establish that Ms. Markezich is facing some "continuing or threatened future injury" that is "imminent" rather than theoretical. *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (quoting *Clapper*, 568 U.S. at 409). And without the plausible threat of an imminent future injury, Ms. Markezich lacks standing to seek forward-looking relief. *Id.*

## II.    Plaintiffs Fail To State An APA Claim.

Plaintiffs' Complaint also fails to state a claim. Although Plaintiffs purport to be confused on this, Opp'n 1 n.1, Danco clearly moved to dismiss both Counts I and II under Rule 12(b)(6) on multiple grounds. MTD 4-5. And Plaintiffs' defenses are unavailing.

### A.    Plaintiffs Are Outside The Statutory Zones Of Interests.

Plaintiffs' zone of interests defense again misstates the legal standard. Their position is essentially that Louisiana (but not Ms. Markezich) falls within the FDCA's and Comstock Act's zones of interests because the lawsuit is related to the statutes' general "purposes." Opp'n 17-18. But whether a plaintiff falls within a statute's zone of interests is "determined not by reference to the overall purpose of the Act in question . . . but by reference to the particular provision" the plaintiff claims was violated. *Bennett v. Spear*, 520 U.S. 154, 175-176 (1997). Although the zone of interests test is not "especially demanding," *DAPA*, 809 F.3d at 162, it is also not entirely capacious. Louisiana's high-level interests in public health (for the FDCA) and promoting public morals and its own state laws (for the Comstock Act) do not qualify.

Louisiana alleges FDA violated the FDCA's REMS provision. Compl. ¶¶ 160-170. That provision is not concerned with population-level public health or interstate commerce: it addresses—and protects—specific patients prescribed specific drugs. 21 U.S.C. § 355-1. Louisiana cites *State of Ohio ex rel. Celebrezze v. DOT*, 766 F.2d 228, 233 (6th Cir. 1985) for the point that

6

threats to a state's safety laws fall within the APA's zone of interests.  Opp'n 18 n.13.  But that reasoning is irrelevant.  Louisiana needs to show that it is within the zone of interests of the "statute the agency is alleged to have violated," not "the APA itself."  *Sierra Club v. Trump*, 929 F.3d 670, 702 (9th Cir. 2019); *see Bennett*, 520 U.S. at 176.  It has not done so.  MTD 14-15.

Plaintiffs' Comstock Act arguments fail for the same reason.  They invoke the statute's "national policy" as interpreted by two federal courts, Opp'n 18—but that is insufficient.  And, as noted above, Plaintiffs do not grapple with the Supreme Court's holding in *Priorities* that "a party 'lacks a judicially cognizable interest in the prosecution . . . of another.' "  599 U.S. at 677 (citation omitted).  Indeed, the main case Plaintiffs cite, Opp'n 18, *Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997), was not about a criminal statute *or* the APA's zone of interests.

All this leaves Plaintiffs to claim there is no evidence Congress sought to preclude judicial review of violations of either statute.  Opp'n 18.  But that has it backwards: there is no indication Congress *authorized* states to bring private suits to enforce either the Comstock Act or the FDCA. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014).

###     B.     Plaintiffs Failed To Exhaust Administrative Remedies.

Plaintiffs also cannot evade the fact that they failed to exhaust their claims before FDA. They contend they were not required to exhaust, citing *MCR Oil Tools, LLC v. DOT*, 110 F.4th 677 (5th Cir. 2024).  Opp'n 20.  But that case held that a different agency's rules did not require exhaustion unless the challenged action "remain[ed] inoperative while the regulated entity exhausts."  110 F.4th at 691.  Here, neither Louisiana nor Ms. Markezich is regulated by the 2023 REMS.  And there are sound reasons to require exhaustion here, where (1) Plaintiffs raise novel arguments that have never been presented to FDA; (2) FDA is already considering additional studies that confirm FDA's prior decision as a result of others who did file citizen petitions; and (3) ruling for Plaintiffs would severely harm Danco—the regulated entity.  MTD 15-16 & n.5, 24-25; *see id.* at 15 (collecting cases requiring exhaustion before FDA).

Plaintiffs are likewise wrong to claim that they fall within an exhaustion exception.  Opp'n 20-21.  FDA's alleged failure to timely respond to some past petitions is not an excuse for Plaintiffs

7

here to skip the process altogether.  Unlike in *Alliance*, where FDA delayed responding to the *plaintiffs'* petitions, Louisiana never filed a citizen petition.  *See All. for Hippocratic Med. v. FDA*, No. 23-10362, 2023 WL 2913725, at \*16 (5th Cir. Apr. 12, 2023).  Plaintiffs' proposed rule would reward skipping administrative exhaustion to get ahead of those who filed citizen petitions, as many other states and entities have done here.  And if FDA's response is "unreasonably delayed," Louisiana can move to compel FDA's action under 5 U.S.C. § 706(1).

Nor would exhaustion be futile.  In *Alliance*, the challenge to the 2000 approval was presented to FDA in a prior citizen petition, *see* 2023 WL 2913725, at \*16; the same is not true here.[2]  FDA's decision not to oppose Plaintiffs' preliminary injunction on the merits here also shows an adverse decision is not "certain," as the futility standard demands.  *Id.* (citation omitted); *see* ECF No. 50.  And finally, Louisiana's fallback claim that exhaustion would cause it irreparable injury is wrong for the reasons already explained.  *Supra* pp.1-6; MTD at 23-25.

**C.      Plaintiffs' Comstock Arguments Fail To State A Claim.**

Danco moved to dismiss Count II because FDA may not statutorily consider the Comstock Act in making a REMS modification.  MTD 20-22.  Congress assigned FDA the role of evaluating whether the drug is safe and effective under the proposed conditions of use, 21 U.S.C. § 393(b)(2); *id.* § 355(b)(1)(A)(i); MTD 20-22, and whether a REMS is "necessary to ensure that the benefits of the drug outweigh the risks" or should be modified to "minimize the burden on the health care delivery system," 21 U.S.C. § 355-1(a)(1), (g)(4)(B)(ii).  Congress has not authorized FDA to base REMS modifications on whether other federal or state laws limit a drug's distribution.  *Id.* §§ 355(d), 355-1; *see* 21 C.F.R. § 314.125(b) (laying out why FDA may deny drug applications).

Rather than engage with this framework, Plaintiffs again invoke the Supreme Court's statement in *FCC v. NextWave Pers. Communications Inc.*, 537 U.S. 293, 300 (2003).  Opp'n 19.  But, as Danco already detailed, Plaintiffs take the statement out of context.  MTD 21.  FDA cannot

---

[2]  The "similar petition" Louisiana references (at 21) did not raise these issues.  *See* ECF No. 1-33  And the *Washington* litigation involved requests to *eliminate* the REMS, which several states and ACOG put before FDA in 2020 and 2022.  *See* 108 F.4th at 1170; *see also* ECF No. 1-32 at 2; ACOG Citizen Pet. (Oct. 4, 2022), https://perma.cc/MXL2-7A6S.

ignore *applicable* laws—but it also has no authority to add Comstock to the specific REMS modification factors that Congress expressly directed be the basis for FDA's decision. *See Motor Vehicle Mfrs. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Plaintiffs claim (at 19) that the Fifth Circuit's lead opinion and Judge Ho's separate opinion in *Alliance* suggest otherwise, but those opinions have no precedential value and are not persuasive, as Danco detailed. MTD 22.

Over a century of federal court precedent and decades of Congressional revisions to the FDCA confirm that the Comstock Act only prohibits distribution of items intended to produce unlawful abortions. *See* MTD 21-22; Former DOJ Officials Amicus Br. 6-19, ECF No. 167-2. Indeed, Plaintiffs ignore that Congress repeatedly amended the FDCA without limiting FDA's ability to approve the types of drugs covered by the Comstock Act, including mifepristone itself. *E.g.*, FDA Amendments Act, Pub. L. No. 110-85, § 909(b), 121 Stat. 823, 950-951 (2007).

### III.    This Dispute Is Not Ripe.

Finally, Plaintiffs' suit is unripe. Contrary to their claim, ripeness considerations do not "end" at "Article III injury." Opp'n 22. Ripeness reflects "Article III limitations on judicial power" *and* "prudential reasons for refusing to exercise jurisdiction." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (citation and quotation marks omitted). Defects as to either one warrant dismissal. *Toca Producers v. FERC*, 411 F.3d 262, 265 n.* (D.C. Cir. 2005). Plaintiffs' conclusory insistence that its suit is "fit[]" for review does not make it so. Opp'n 22.

Although Plaintiffs claim their challenge is "purely legal," *id.*, they plainly attack FDA's scientific assessments, which "involve[] primarily issues of fact," *Seven Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 180-181 (2025); *see* MTD 18-20. Plaintiffs also ignore the other fitness "prongs"—i.e., whether review "would benefit from a more concrete setting, and whether the agency's action is sufficiently final," *Walmart Inc. v. DOJ*, 21 F.4th 300, 311 (5th Cir. 2021)— that FDA's ongoing review plainly implicates. Indeed, Plaintiffs do not dispute that a case is generally unripe where, as here, the agency "will have another opportunity to rule on [the plaintiff's] contentions," so immediate "judicial review before the agency has an opportunity to express its final views would contravene sound policies favoring judicial and administrative

economy." *Pennzoil Co. v. FERC*, 742 F.2d 242, 244-245 (5th Cir. 1984) (citation omitted).[3]

Nor do Plaintiffs dispute that FDA reimposing the kinds of restrictions Plaintiffs seek would moot this challenge.[4] *See* MTD 16. And an FDA decision reaffirming mifepristone's safety would otherwise "allow[] for more intelligent resolution" of Plaintiffs' claims. *See Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012). Among other things, FDA's "supplemental analysis" would clearly be part of the "administrative record." *See El Puente v. Army Corps of Eng'rs*, 100 F.4th 236, 252 (D.C. Cir. 2024). That analysis would implicate the APA's "rule of prejudicial error," 5 U.S.C. § 706, under which a court need not set aside "the agency's ultimate approval" "absent reason to believe that the agency might disapprove" it upon further review, *Seven Cnty.*, 605 U.S. at 185. And it would bear on whether vacatur is an appropriate remedy: FDA "may well be able to justify its decision," which would make it inappropriate and "disruptive to vacate [an approval] that applies to other members of the regulated community." *Cent. & S. W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000).

Louisiana attempts to brush off its multi-year delay in filing suit. Opp'n 22 n.15. But Louisiana's dawdling underscores it "will suffer no irreparable harm pending completion of [FDA's] inquiry." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 588 (5th Cir. 1987); *see Pennzoil*, 742 F.2d at 245 (not ripe absent "direct and immediate impact" and "threat of irreparable harm"). By ignoring the standard, Louisiana concedes it cannot meet it.

**CONCLUSION**

For these reasons, the Court should dismiss Plaintiffs' Complaint.

---

[3] The need for factual development also underscores that Plaintiffs' motion for preliminary relief is unripe without the "full" administrative record. MTD 17; *cf. Roake v. Brumley*, No. 24-30706, 2026 WL 482555 (5th Cir. Feb. 20, 2026) (en banc) (vacating preliminary injunction as unripe absent an "actual record").

[4] Contrary to what Plaintiffs claim, this does not "confuse[] ripeness with mootness." Opp'n 22 n.16. Courts routinely hold "a case is not ripe" if "further administrative process may render Plaintiffs' purported future injuries moot." *Air Prods. & Chemicals, Inc. v. GSA*, 700 F. Supp. 3d 487, 498 (N.D. Tex. 2023); *see also*, *e.g.*, *Pennzoil*, 742 F.2d at 244-245.

Dated:  March 17, 2026

Respectfully submitted,

*/s/ William Most*
William Most
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500 #9685
New Orleans, Louisiana 70170
Tel: (504) 509-5023
Fax: (504) 414-6400
william.most@gmail.com

*/s/ Jessica L. Ellsworth*
Jessica L. Ellsworth*
Alexander V. Sverdlov*
Danielle Desaulniers Stempel*
Dana A. Raphael*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Tel:  (202) 637-5600
jessica.ellsworth@hoganlovells.com

*admitted *pro hac vice*

*Counsel for Danco Laboratories, LLC*

11

## CERTIFICATE OF SERVICE

I certify that on March 17, 2026, I electronically filed the foregoing using the CM/ECF system.  Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record.

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth*

*admitted *pro hac vice*